LAKIS *v.* DEPARTMENT OF LIQUOR CONTROL.

[Cite as Lakis v. Department of Liquor Control, 1 Ohio Misc. 109.]

(No. 218530—Decided July 30, 1964.)

*Mr. John T. Feighan* and *Mr. Ned L. Mann,* for appellant.

*Mr. William B. Saxbe,* attorney general, and *Mr. Larry G. Brake,* for appellee.

HARTER, J. This matter is in this court upon appeal in accordance with Section 119.12, Revised Code. It appears that in May, 1963, the Director of the Department of Liquor Control of the State of Ohio issued a written order that departmental

investigators were to make certain investigations of specific permit establishments in the downtown area of Cleveland. This order was supplemented in June to include this appellant's premises.

Pursuant to this supplemental order, two investigators for the department began calling at appellant's premises about June 24th and continued doing so until July 3, 1963. One of the investigators testified at the hearing before the Liquor Control Commission that on June 24th a dancer or entertainer in the permit premises asked him to buy her a drink but, when the dancer ordered it, the barmaid refused to serve it to the dancer on her order. After several more calls at the appellant's place of business, the investigator was asked by another entertainer on July 3, 1963, if she could join him at the bar and if he would buy her a drink. Because the man ordered the drink for the dancer this time, the barmaid served the dancer.

On July 23, 1963, a citation in writing was served upon the permit holder as to the July 3, 1963 episode. It charged two claimed violations: (1) that an agent or employee of the permit holder solicited a patron to purchase her a drink; and (2) that an agent or employee of the permit holder *permitted* a person not in the employ of the permit holder to solicit a patron to buy her a drink.

After several motions had been filed with and ruled upon by the commission, the matter came on for hearing September 17, 1963. Thereafter, the Liquor Control Commission found that both violations had been proven and an order suspending appellant's license for 100 days was entered. From that order this appeal was perfected to this court.

In this court, counsel for the appellant assert four specifications of error. In the first such specification, it is contended that the procedure followed by the commission violated the constitutional rights of the appellant. Apparently, counsel relies upon that part of Section 119.12, Revised Code, which requires a reversal of an administrative agency's order if it is not "in accordance with law." According to appellant's claim, the commission's actions prior to, and at, the hearing did not observe the mandate of regulation 65 to the effect that the commission should follow the rules of procedure adopted by the civil courts of Ohio, and had the effect of depriving appellant of due process of law.

While I do not wish to be understood as giving my judicial

blessing to all of the displays of personalities exhibited by this record, it is my conclusion that the commission granted a full hearing and had the power to do what it did, procedurally. There was, in my opinion, nothing done so arbitrarily, or so capriciously, or in such gross abuse of discretion as to cause the commission to lose its jurisdiction, or to require me to find that the appellant was deprived of due process of law.

There is another reason why I feel compelled to reject this claim of error. There seems to have been no direct attempt on the part of the permit holder's counsel to raise this constitutional problem before the commission so that the Commission could specifically pass upon it. It is well settled, I believe, that a reviewing court will not consider a constitutional question, claimed to be involved in a case, which was not submitted to, nor decided by, the lower tribunal. See *Village of Clarington* v. *Althar*, 122 Ohio St. 608, and *Thatcher* v. *Pennsylvania, Ohio & Detroit Rd. Co.*, 121 Ohio St. 205.

The second specification of error contends that the Commission's action was not in accordance with law in that it erred in not quashing the citation, in its entirety, upon the ground that regulation No. 59 is invalid.

Regulation 59, which has been worded in its present form since 1950, provides:

"The holder of a permit issued by the Department shall not, nor shall any of his agents or employees solicit or in any manner approach a patron for the purchase of drinks of beer or intoxicating liquor for himself or such agent or employee or any other person. The holder of a permit issued by the department shall not permit any person not in his employ to solicit or in any manner approach a patron for the purchase of drinks of beer or intoxicating liquor either for himself or for any other person."

As I see it, both sentences of this regulation are valid and enforceable. Each sentence covers situations which are well within the "general welfare" area as that term is explained in detail in *Morissette* v. *United States* (1952), 342 U. S. 246, 96 L. Ed. 288, 72 S. Ct. 240. As I see it, no truly useful purpose would be served by my quoting extensively from the *Morissette* opinion here. It should be read in full. With the law which is explained in it as the springboard, I believe that the framers of regulation 59 of the Liquor Control Commission would have been justified in making the proprietors of liquor

retailing establishments responsible for many kinds of improper conduct by employees or patrons within the permit premises *without any intent or knowledge or participation* therein by the proprietors. In other words, the promulgators of the regulation could have dealt with the situation as a "public welfare" problem, *i. e.*, make *any* improper conduct, within permit premises, a hazard of the business to be borne by the proprietor *at his peril* even without his fault. This extremely harsh view is predicated upon the theory that the public good can require some particular party, who has the power to control a given situation, to do such controlling in such a way that the public interest is best served. The dispensing of intoxicating liquors is a field where this theory has been applied since at least 1849 when the Connecticut courts upheld a law which made it a crime for a proprietor to sell intoxicating liquor to a drunkard, even though such proprietor did not know he was a drunkard. This whole concept is set forth in the *Morissette* opinion. Under this theory, I hold that both sentences of regulation 59 are reasonable in their present wording—that they are not arbitrary nor discriminatory. Further, I do not regard regulation 59 as an exercise of legislative powers by an administrative agency. This regulation 59, in my opinion, meets the tests enunciated by the Supreme Court of Ohio in *Coady* v. *Leonard* (1937), 132 Ohio St. 329.

The third claimed error relates to the appraisal and evaluation of the evidence by the Liquor Control Commission. It is asserted that the order entered as to violation No. 2 in the citation is contrary to law in that there is no probative, reliable or substantial evidence to support it. Counsel contended that this violation related solely to the episode of June 24, 1963—when some girl named "Marla" asked an investigator to buy her a drink, the investigator told her to order one for herself, and the barmaid refused to fill such order. In advancing this argument in the appellant's brief, counsel make the significant assertion (page 14) "That is the only testimony in the entire record concerning a person *not in the employ* of the appellant."

I feel that appellant's counsel have failed to understand the true significance of the charge in violation No. 2. In most night clubs throughout the state of Ohio, it has been contended for years that the dancers, or floor-show entertainers, were not *employees* of the permit holder but were, on the contrary, *inde-*

*pendent contractors* who were answerable to their booking-agents, not to the permit holders. This legal concept was given express recognition in two cases—one in the Franklin County Common Pleas Court, entitled *Roxy Musical Bar, Inc.,* v. *Board of Liquor Control,* No. 202700, and the other in the Franklin County Court of Appeals entitled *Mann, Inc.,* v. *Board of Liquor Control,* No. 7055, as decided February 13, 1963.

In the first case, the dancer was held to be an independent contractor; in the latter, the concept was recognized but the dancers were held to be employees.

If the Department of Liquor Control wishes to press charges of violation of regulation 59 through the solicitation of drinks by dancers, the only proper or safe way to proceed is to make charges in the alternative. Ohio's civil procedure contemplates and approves such a device. See *Globe Indemnity Co.* v. *Wassman,* 120 Ohio St. 72, paragraphs 2 and 3 of the syllabus. This means that, at the hearing before the Board, the Department can go either way in its theory, *i. e.,* it can contend that the dancer soliciting drinks from patrons was an employee, *if* the evidence justifies such a charge, or the Department may fall back upon the more difficultly proven violation of the second sentence of regulation 59. Under the second sentence of the regulation, it is recognized that the offending dancer is a legal stranger to the operation of the permit premises, and the evidence must be tested to determine whether some admitted employee (*i. e.,* some one other than the entertainer) *knowingly permitted* such solicitation of patrons for drinks. It is a rare case where the permit holder or his counsel concede that the entertainer is an employee. The attorneys for this permit holder have made this concession at least twice, once in the brief, as above quoted, and once at the hearing in the following language:

"Mr. Duncan (the Attorney General's representative at the commission hearing) may the record show that it is stipulated and agreed by and between Counsel for the Ohio Department of Liquor Control, that on July 3, 1963, at or about 12:05 a. m., one Ruby Miller, also known as Margaret Hackett, was an employee of Charles Lakis, d/b/a Mickey's Lounge Bar, and working on the premises—

"Chairman Thomas: 'Is that acceptable, Mr. Feighan?'

"Mr. Feighan: 'With only the added feature that she was an entertainer performing a dance.' "

When the *theory* of these points of evidence, and concessions by counsel, is fully understood, it can be said without fear of successful contradiction, that this record supports the Commissions' order as to violation No. 1—soliciting by employees on July 3, 1963—by substantial, reliable and probative evidence, and that the order is therefore in accordance with law.

Proof of one, or the other, of the violations is enough to support the commission's order. The violations were not interrelated in wording so that, if one failed of proof, they both failed. I hold that Violation No. 1 was established by the requisite proof. Accordingly, I need not consider in detail the evidence as to No. 2, involving the claim that the barmaid knowingly and wilfully permitted the solicitation of patrons to buy drinks. By the barmaid's own testimony, I think it has been shown that the appellant's rules contemplated violations of regulation 59. The barmaid, an admittedly responsible employee, there stated: "I do not pour a drink for anybody unless it is ordered by the gentleman. * * * My instructions daily are not to pour a drink unless it is ordered by the gentleman." To my mind, this is a complete perversion of the spirit and plain meaning of regulation 59, but that is another problem, and I see no need to go into it now because I find that violation No. 1 was proved.

The fourth specification of error is an assertion that the finding and order of the Liquor Control Commission were not supported by reliable, substantial and probative evidence. The argument in support of this specification is predicated upon the proposition that the "testimony is sharply disputed by the employee who purportedly solicited the drink and the barmaid who served the drink." This argument concedes that there was at least *some evidence* going each way and I hold there was such evidence. It was the right and duty of the Liquor Control Commission to apply tests of their own, as the triers of the facts, as to credibility and probative value of this evidence. If there were *some* reliable, probative and substantial evidence adduced (even though it was disputed), to support the commission's finding, this court should affirm their finding. Such is the mandate of Section 119.12, Revised Code.

For these reasons, I hold that I must affirm the order from which this appeal is taken with exceptions reserved in favor of the appellant.

*Order affirmed.*