A. B. Jac, Inc., Appellee, *v.* Liquor Control Commission, Appellant.

[Cite as A. B. Jac, Inc., v. Liquor Con. Comm. (1972), 31 Ohio App. 2d 9.]

(Nos. 6834, 6835, 6836—Decided July 7, 1972.)

*Mr. Ned W. Thomas,* for appellee.
*Mr. William J. Brown,* attorney general, and *Mr. John A. Connor, II,* for appellant.

Potter, P. J. This appeal involves three separate cases which were heard before the Ohio liquor control commission. In each case the commission found the stipulated conduct was in violation of regulation LCc-1-52, and ordered the permit holder's license suspended. On appeal to the Common Pleas Court of Lucas County, that court reversed the orders of the liquor control commission. Two charges were essentially that the owner's agent, knowingly and/or willfully, allowed in and upon the permit premises, improper conduct, in that he allowed females to dance with insufficient attire, to wit, pasties which covered only the nipple and areola portion of their (her) breasts in violation of LCc-1-52, a regulation of the Ohio liquor control commission.

The third charge contained the words "entertain" and "band aids" in lieu of the words "dance" and "pasties."

The appellee entered pleas of denial but with a stipulation admitting all the elements of the particular charge.

At the time of the hearing before the liquor control commission the attorney for the permit holder stated that the females were members of an all-girl band.

The permit holder, in his appeal to the Court of Common Pleas, presented three assignments of error, the substance of which was that the judgment was not substantiated by reliable, probative, and substantive evidence; that the regulation was vague and ambiguous; and that the regulation did not prohibit the acts set forth in the complaint (sic). The Court of Common Pleas stated the following in its journal entry:

"It is therefore the finding of this court that the orders of the Liquor Control Commission are not supported by reliable, probative and substantial evidence and are not in accordance with law, and therefore reversed."

On appeal to this court, a majority of the court found that the liquor control commission had failed to perfect an appeal under provisions of R. C. 119.12, and dismissed the appeal for the reason that the commission can appeal only on questions of law relating to the constitutionality, construction or interpretation of statutes, and rules or regulations of the commission. The Supreme Court, in 29 Ohio St. 2d 139, reversed and remanded the causes to this court with direction to consider the appeal upon the merits. This we now do.

There were no assignments of error filed by the liquor control commission but counsel states that there are but two questions for this court's consideration. "Was the order of the liquor control commission supported by reliable, probative and substantial evidence? Was it in accordance with law?"

Since the permit holder admitted each and every element of the charges, our concern is whether the commission order is in accordance with law. R. C. 4301.03 permits the adoption and promulgation of rules and regulations by the liquor control commission. Subsection (B) provides that the commission may adopt:

"Rules, regulations, and orders providing in detail

for the conduct of any retail business authorized under permits issued pursuant to such chapters, with a view to insuring compliance with such chapters and laws relative thereto, and the maintenance of public decency, sobriety, and good order in any place licensed under such permits;"

The pertinent portion of regulation LCc-1-52 is as follows:

"No permit holder, his agent, or employee shall knowingly or willfully allow in, upon or about the permit premises improper conduct of any kind, type or character * * * or any indecent * * * entertainment * * *."

Regulation LCc-1-52 has been interpreted many times. For a case and costume strikingly similar, see the unreported opinion by Judge Troop in *Benny's, Inc.*, v. *Liquor Control Commission*, No. 9268, of the Court of Appeals for Franklin County, Ohio (1969). The regulation is in general terms, but considering the ingenuity of man, to specify all of the acts which might offend public decency, sobriety and good order, would require a regulation which would go on *ad infinitum*. When considered in conjunction with the statutes and interpretations, we do not find the regulation vague or overbroad.

The appellee seeks shelter for his unadorned performers in the sanctuary of the First Amendment. Appellee asserts that the performance constitutes a method of expression in the absence of proof of obscenity. We feel that enforcement of the commission's orders will have no chilling effect on either the performers or their First Amendment freedoms. See the dissent in *Glancy* v. *County of Sacramento*, 94 Cal. Rptr. 864 at 880, the following:

"Obscenity adjudications demand crass realism lest the judges find themselves wandering through a never-never land of abstruse doctrine."

The dissent compared First Amendment rights and the banning of billboards where the primary purpose of commercial advertising is to advance the economic welfare of the business enterprise. The end result here, as in California, is not the communication of ideas but the bar owner's cash register. See the bartender's assertion in the

instant case that "It's been a long winter and we haven't made any money, and this is the way to make it."[1]

In the instant cases, this court is not required to precisely determine the limits of permissible conduct under the First Amendment. We concur with Judge Troop in the case of *Crouse* v. *Liquor Control Commission,* decided by the Court of Appeals for Franklin County, No. 7669, where he states:

"We are not concerned with general standards applied to a variety of places of entertainment or amusement involving social mores or community social levels, but the application of a regulatory measure as to the conduct of the permit holder in the operation of his business."

In the early history of the regulation of the liquor industry, the state of Ohio, as a matter of public policy, was given a state monopoly of the distribution and sale of spiritous liquors in order to prevent "the evils arising from such traffic." See *Coady* v. *Leonard,* 132 Ohio St. 329. With the passage of time, perhaps the language would have been more temperate but the monopoly and control is still as stringent. See *Winery, Inc.,* v. *Board,* 167 Ohio St. 61 at 64, certiorari denied, 356 U. S. 937 (1958) which states:

"The most cursory examination of that and the following cases indicates clearly the practically unlimited extent of legislative power to control the manufacture, distribution and sale of alcoholic beverages, which is recognized by the law and the great extent to which this power has been allowed to be exercised and delegated without judicial interference; *State Board of Equalization of California* v. *Young's Market Co.,* 299 U. S., 59, 81 L. Ed. 38, 57 S. Ct., 77; *Ziffrin, Inc.,* v. *Reeves, Commr.,* 308 U. S., 132, 84 L. Ed., 128, 60 S. Ct., 163; *United States* v. *Frankford Distilleries, Inc.,* 324 U. S., 293, 89 L. Ed., 951, 65 S. Ct, 661; *State, ex rel. Wetterstroem,* v. *Department of Liquor Control,* 129 Ohio St., 185, 195 N. E., 372; *State, ex rel. Zugravu,*

---

[1] Although there have been frequent assertions to the contrary, apparently "profit" is "a dirty word" in Ohio and elsewhere. See *State, ex rel. Keating,* v. *Film* (1971), 27 Ohio St. 2d 281, wherein the producer of Vixen is reported to have grossed $8,000,000 on an approximate outlay of $70,000.

v. *O'Brien*, 130 Ohio St., 23, 196 N. E., 664; *Frankenstein* v. *Leonard, supra*; and *State, ex rel. Superior Distributing Co.* v. *Davis et al., Tax Commission*, 132 Ohio St., 308, 7 N. E. (2d), 652. From the law expounded in those cases, it is seen that the liquor industry of any state in the union exists, if at all, only at the will and pleasure of the people of that particular state, either by popular vote or through their legislative body, and then only according to the laws prescribed by such people or legislative body and the rules and regulations of any administrative body to which authority has been lawfully delegated. And it is of prime importance to recognize the fact that control of its liquor industry by a state is not subject to the constitutional sanctions and limitations ordinarily attendant to an exercise of its general police power by a state. The liquor industry of the entire nation was divested of any such constitutional guaranties when it was divested of legal existence by the Eighteenth Amendment to the Constitution of the United States, and the Twenty-first Amendment cannot be said to have returned to the liquor industry any of the protection and guaranties which may have existed prior to the passage of the Eighteenth Amendment.''

The same philosophy was recently reiterated in *Solomon* v. *L. C. Commission*, 4 Ohio St. 2d 31 at page 34, certiorari denied, 384 U. S. 928 (1966):

''Because of the harmful potentialities incident to the conduct of such business, those engaged therein must obtain a permit from the state and are thereafter subject to strict regulations by statute and by rules and regulations adopted and promulgated pursuant to statutory authority by the Department of Liquor Control, the regulating and supervising agency created by the state to oversee and police, as it were, the liquor business. One who applies for and is issued a permit to sell alcoholic beverages thereby assents to the reasonable lawful conditions imposed by statute and rule.''

Therefore, in determining whether the statutes and the regulations are reasonable, we need not apply the standards as set forth in *Roth* v. *United States* (1957), 354

14

U. S. 476; and *A Book Named "John Cleland's Memoirs of a Woman of Pleasure"* v. *The Attorney General of Mass.* (1966), 383 U. S. 413, and other related decisions.

Perhaps, in another setting the performance or costume would not affront "contemporary community standards," but this is not our consideration here,[2] for a permit holder enjoys a privilege and not a right surrounded by constitutional protections. See, also, *Benny's, Inc.,* v. *Liquor Control Commission, supra.*

The decision of the liquor control commission in each case was supported by reliable, probative and substantial evidence and was in accordance with law.

The judgments of the Common Pleas Court are reversed and the orders of the liquor control commission are affirmed.

*Judgments reversed.*

BROWN and WILEY, JJ., concur.

BROWN, J., concurring. My concurrence in the judgments herein is reluctant. It is impelled only by the reality that, in a former appeal of these cases to the Ohio Supreme Court involving at that time only a procedural question, based upon Justice Herbert's concurring opinion, the Ohio Supreme Court appeared poised to review the merit issues and to conclude that the liquor control commission had the lawful power and authority to suspend the appellee's liquor permit, and properly did so, for reasons resembling or coinciding with the majority opinion herein. (See 29 Ohio St. 2d 139.)

The claimed specific authority for the permit suspension is that exhibiting a female band with insufficient covering of the breasts violated regulation LCc-1-52 of the Ohio liquor control commission in that it constituted "improper conduct" or "indecent entertainment," within the meaning of that regulation, the pertinent parts of which are set forth verbatim in the majority opinion.

---

[2] See, however, R. C. 2905.34(B):

" 'Nudity' means the showing * * * of a female breast with less than a full, opaque covering or any portion thereof below the top of the nipple * * *." Effective September 15, 1970.

It is my view that regulation LCc-1-52, proscribing "improper conduct" and "indecent entertainment," is invalid because of its unconstitutionally vague, indefinite and uncertain language. In the excellent analysis of the principle of unconstitutional vagueness and uncertainty by Judge Potter in *State* v. *Saionz*, 23 Ohio App. 2d 79 at p. 83, and paraphrasing his apt language therein, the challenged regulation LCc-1-52, to be valid, must describe an act which is "definable," and it is required to be definable "if we are to elude the 'vice of vagueness' " (*Lanzetta* v. *New Jersey*, 306 U. S. 451; *Watkins* v. *United States*, 354 U. S. 178) and "if we are to prevent the trier of the cause from creating his own standard in each case" (*Papachristou* v. *Jacksonville*, 405 U. S. 156; *Smith* v. *Florida* (decided February 24, 1972), 405 U. S. 172; *Winters* v. *New York*, 333 U. S. 507; *Herndon* v. *Lowery, Sheriff*, 301 U. S. 242; *Stromberg* v. *Calif.*, 283 U. S. 359; *Connally* v. *Gen. Constr. Co.*, 269 U. S. 385; *United States* v. *Cohen Grocery Co.*, 255 U. S. 81; *Chicone* v. *Liquor Control Comm.*, 20 Ohio App. 2d 43; R. C. 4301.03(B); cf. *Cincinnati* v. *Wayne*, 23 Ohio App. 2d 91, and *Stouffer Corp.* v. *Board of Liquor Control*, 165 Ohio St. 96).

Regulation LCc-1-52, as interpreted in the majority opinion, would not prevent the liquor control commission as "the trier of the cause from creating its own standards in each case." Conceivably, since, in these cases, the regulation was directed solely to dress, or the insufficiency thereof, this empowers the commission to suspend a liquor permit because the permit holder wilfully allowed "improper conduct" on the permit premises by consenting to the patrons' enjoyment of refreshments or entertainment, or both, without the adornment of bow ties, cuff links and pincenez glasses. The absence of standards or guidelines can conjure additional multitudinous absurd results.

The liquor control commission counters the void for vagueness principle which underlies the many cited cases in the third paragraph of this concurring opinion by advancing the propositions of law that a liquor permit holder does not have a property right but only a privilege, that he must be strictly regulated, and that he does not have the

constitutional protection against laws or regulations which are "void for vagueness." The many cases cited by appellant, liquor control commission, to support such reasoning and the conclusion that the "void for vagueness" concept does not apply to a commission regulation—namely, *Ziffrin* v. *Reeves*, 308 U. S. 132, 138; *Crowley* v. *Christensen*, 137 U. S. 86 at 91; *Lewis* v. *City of Grand Rapids*, 356 F. 2d 276; *State, ex rel. Zugravu*, v. *O'Brien*, 130 Ohio St. 23; *Solomon* v. *Liquor Commission*, 4 Ohio St. 2d 31; *Crouse* v. *Liquor Control Commission*, Case No. 9268, Court of Appeals, Franklin County (distinguishable, but involving improper conduct through immoral dancing)—do not raise such a legal issue. Therefore, they do not attempt to establish by headnotes or holdings that the commission regulation is exempt from the "void for vagueness" principle. *State* v. *Pugh*, 43 Ohio St. 98; *State, ex rel. Gordon*, v. *Rhodes*, 158 Ohio St. 129; 14 Ohio Jurisprudence 2d 646, Section 215.

The Ohio General Assembly delegated rule-making power to the liquor control commission through R. C. 4301.03. An administrative agency, such as the liquor control commission, may not act arbitrarily or capriciously in the enactment of rules and regulations in the exercise of its delegated powers. An administrative regulation must be reasonable to be valid, and this requirement includes the enactment of rules which are not unconstitutionally void for vagueness. *Manhattan General Equipment Co.* v. *Commissioner of Internal Revenue*, 297 U. S. 129 at 134, reh. denied, 297 U. S. 728; 2 American Jurisprudence 2d 131, Admin. Law, Section 303; cf. *Boyce Motor Lines* v. *United States*, 342 U. S. 337.

The case of *Benny's, Inc.,* v. *Liquor Control Commission*, No. 9268, Franklin County Court of Appeals (1969), heavily relied upon by appellant is, for an additional reason, distinguishable because it involved not just claimed insufficient attire, but evidence of acts consisting of immoral dancing, thus improper conduct, and for somewhat additional reasons other cases relied upon by the Commission—namely, *Broadway Enterprises, Inc.,* v. *Liquor Control Commission*, No. 9151, Court of Appeals, Frank-

lin County (1968); *Friedman* v. *Liquor Control Commission*, No. 8938, Court of Appeals, Franklin County (1968)—are likewise distinguishable and inapposite. These three cited cases also do not raise the legal issues of void for vagueness of the commission regulation, and, consequently, are not dispositive of such issue. *State, ex rel. Gordon,* v. *Rhodes, supra*; 14 Ohio Jurisprudence 2d 646, Courts, Section 215.

It would be helpful if the liquor control commission would, concerning the subject matter covered by regulation LCc-1-52, spell out ''in detail'' what constitutes ''improper conduct'' or ''indecent entertainment,'' as mandated by R. C. 4301.03(B).

The analysis of the applicable legal principles discussed above in no way is intended to express personal approval of or give a cloak of respectability to the rare exposition challenged in this case.