Angola Corp., Appellant, *v.* Liquor Control Comm., Appellee.

[Cite as Angola Corp. v. Liquor Control Comm. (1972), 33 Ohio App. 2d 87.]

(No. 72AP-212—Decided November 28, 1972.)

*Mr. J. Richard Lumpe,* for appellant.
*Mr. William J. Brown,* Attorney General, *Mr. John A. Connor* and *Mr. Nathaniel Hawthorne,* for appellee.

Reilly, J. This is an appeal from a judgment of the Franklin County Court of Common Pleas which affirmed an order of the Ohio Liquor Control Commission.

Plaintiff, the appellant herein, was charged September 6, 1970, with two violations of knowingly and willfully allowing improper conduct upon its permit premises in violation of Section LCc-1-52 of the Ohio liquor control regulations. The violations as charged are as follows:

"*Violation 1*—On September 6, 1970, at or about 12:05 o'clock A. M., EST., your agent James E. Fall did know-

ingly and/or willfully allow in and upon the permit premises, improper conduct, in that your agent James E. Fall, did allow a female to dance in a manner which suggested an indecent act—in violation of LCc-1-52 a regulation of the Ohio Liquor Control Commission.

"*Violation 2*—On September 6, 1970, at or about 12:05 o'clock A. M., EST., your agent, James E. Fall, did knowingly and/or willfully allow in and upon the permit premises, improper conduct in that your agent James E. Fall did allow a female to have physical conduct with various patrons, to-wit, placing her buttocks on a male patron's lap and performing in a manner which suggested an indecent act—in violation of LCc-1-52 a regulation of the Ohio Liquor Control Commission."

The liquor control commission, after a hearing, found the allegations well taken, and ordered plaintiff's permit suspended for twenty-eight days. Plaintiff appealed to the Franklin County Court of Common Pleas.

The Common Pleas Court, in its decision and entry wrote, in pertinent part, as follows:

"The evidence is clear that the performance of the Go-Go dancer was suggestive of an act of sexual intercourse in both instances. Upon consideration of the entire record, this Court finds that the order of the Ohio Liquor Control Commission is supported by reliable, probative and substantial evidence and is in accordance with law. The order is, therefore, *AFFIRMED* at the costs of appellant."

Counsel for plaintiff relies heavily in his brief upon the decision of this court in *Fortner* v. *Thomas*, No. 8714, decided December 26, 1968 (reversed on other grounds), concerning an indecent act, as follows:

"* * * In our view, 'indecent' is synonymous with 'obscene.' The United States Supreme Court has recognized that 'obscenity' is a meaningful, though very limited, legal concept. *The court has provided guidelines as to its meaning and application.* See *Roth* v. *United States*, 354 U. S. 476; *Jacobellis* v. *Ohio*, 378 U. S. 184; *Ginzburg* v. *United States*, 383 U. S. 463. These cases and those cited therein,

provide the interpretation of the word 'indecent' and the word 'obscene' as used in the regulation. As so defined and interpreted, we find the two words sufficiently definite and therefore reasonable and lawful.'' (Emphasis added.)

Consequently, applying the *Fortner* case, it is counsel's contention that the elements established by the Supreme Court concerning the meaning and application of ''obscene'' and ''indecent'' must be proven before a conviction can be sustained. Such elements are cited, along with counsel's basic argument, at page 3 of his brief as follows:

''1. The dominant theme of the material taken as a whole appeals to a prurient interest in sex;

''2. The material is patently offensive because it affronts contemporary community standards relating to the description or representation of sexual matters;

''3. The material is utterly without redeeming social value.

''See *Roth* v. *United States, supra; Jacobellis* v. *Ohio, supra; Ginzburg* v. *United States, supra; State* v. *Mazes,* 7 Ohio State 2nd, 136. All three elements must exist and *must be proven* at the trial before a ruling can be made that the material is indecent or obscene. Absent such proof or coalescence of the above three elements, the finding of the Liquor Control Commission in the instant case and the finding of the Common Pleas Court of Franklin County in the instant case must be reversed. * * *''

Judge Troop, however, expressed a different viewpoint in *Ivan Friedman* v. *Liquor Control Commission,* No. 8938, decided by this court March 5, 1968, in the following quoted passage:

''Commission regulations, including No. 52, serve the statutory injunction contained in Section 4301.03 (B), Revised Code, when they are designed to maintain 'public decency, sobriety, and good order.' The enforcement division of the liquor department should be dedicated to the accomplishment of that very serious purpose. It could well be questioned whether the employment of an almost completely naked woman in a dance routine in a public bar

is an attempt to maintain public decency, but admitting that opposition to such performance is an antiquated and puritanical point of view, let us note the fact pattern in the instant case.

"Go-go girls appear to have social approval in the present day. Whatever the title conferred, the girls, it is generally conceded according to counsel in oral argument, appear in a halter and a pair of panties. Thus displayed, 'Inez' danced on a bar within the reach of patrons consuming alcoholic beverages—males for the most part. One witness said 'her strap fell' during the dance on the bar (R. 39), which was undoubtedly an occupational hazard, but nevertheless could well provoke an incident. *To dance essentially bare and within reach of patrons, inebriated and otherwise, cannot be said to be designed to maintain decency and good order.*" (Emphasis supplied.)

Furthermore, we note the following significant statement by Judge Zimmerman in *Solomon* v. *Liquor Control Comm.* (1965), 4 Ohio St. 2d 31, at page 34:

"In approaching a decision in this case, it is of importance to consider the nature of the liquor business, particularly as it here relates to the dispensing and sale of intoxicating liquor at retail by the glass. Because of the harmful potentialities incident to the conduct of such business, those engaging therein must obtain a permit from the state and are thereafter subject to strict regulation by statute and by rules and regulations adopted and promulgated pursuant to statutory authority by the Department of Liquor Control, the regulating and supervising agency created by the state to oversee and police, as it were, the liquor business. One who applies for and is issued a permit to sell alcoholic beverages thereby assents to the reasonable and lawful conditions imposed by statute and rule."

Thereafter, whatever the generally accepted mores may be at a particular time and place and in particular circumstances outside permit premises, a permit holder must conduct his business in a manner designed to maintain public decency and good order. This concept was re-

iterated by this court in *Crouse* v. *Liquor Control Comm.*, No. 7669, decided January 12, 1965, where it was said:

"Regulation No. 52 of the commission is the basis of the violation charged as numbered one. It is admitted that the regulation is stringent and the language used peculiarly that of the agency. As has been pointed out many times, a permit holder enjoys the privilege of doing business in Ohio subject to the regulations imposed by the commission. He may meet the requirements or forfeit his privilege. The language of the regulation may be regarded as strict or exacting, but it must be presumed to have been designed as a measure of control and necessary to be imposed to provide places, where the public may go to purchase alcoholic beverages, which are suitable, decent and properly conducted. *We are not concerned with general standards applied to a variety of places of entertainment or amusement involving social mores or community social levels, but the application of a regulatory measure as to the conduct of a permit holder in the operation of his business.*" (Emphasis supplied.)

Therefore, the *Fortner* case is inconsistent with the foregoing standard for permit holders. Further, the *Fortner* tests are vague and unenforceable in this context. Consequently, we overrule the *Fortner* case as to the standard of conduct a permit holder must adhere to relative to indecent acts and improper conduct in the operation of his business.

Plaintiff further contends that the order is not supported by reliable, probative, and substantial evidence. Note R. C. 119.12. The Administrative Procedure Act does not define the meaning of those terms. Hence, we must look to case law for their definition. The definitions of concern are included in *Ohio Real Estate Commission* v. *Cohen* (1962), 90 Ohio Law Abs. 137, where paragraph 6 of the headnotes states:

"The evidence required by Section 119.12, Revised Code, to support an order of an administrative agency on an appeal therefrom to the courts must be:

"1. Reliable, that is, dependable, with reasonable as-

surance of its probability, as not only truthful but also true.

"2. Probative relates to the evidentiary value of the testimony and other evidence in an analytical sense, having depth and being more than merely superficial or speculative.

"3. Substantial would mean that the evidence has body or substance of sufficient degree to be of some weight, as well as quality, that gives it standing and credence, as well as dependable and trustworthy."

Note also *Liquor Control Comm.* v. *Bartolas* (1963), 10 Ohio Misc. 225; *Lakis* v. *Department of Liquor Control* (1964), 1 Ohio Misc. 109. Moreover, cases before the liquor commission are civil in nature and, consequently, the burden of proof is by a preponderance of the evidence. *B. P. O. of Elks* v. *Board of Liquor Control* (1957), 105 Ohio App. 181.

The testimony of Mr. Paul Detty is noteworthy as to whether there was reliable, probative, and substantial evidence in the record. Mr. Detty testified, in part, upon direct examination, at pages 5-7 as follows:

"Q. State your name and occupation for the Commission.

"A. Paul Detty, Investigator, Ohio Department of Liquor Control.

"Q. And on September 6, 1970, did you have occasion to be in the premises of the Angola Corporation at 7132 Airport Highway in Holland, Ohio?

"A. Yes, sir, I did.

"Q. On that date and time in question, will you relate to the Commission what occurred?

"A. At approximately 12:05 on September 6, Investigator Rosan and myself were seated at a table in the permit premises, and at this time a go-go girl began dancing to a song on the juke box. At this time, she began her dance and there was a pole fastened to the stage, to the ceiling. At this time, she grabbed ahold of the pole with her hands and placed her buttocks area against the pole and began going up and down on the pole. She did this sev-

eral times during the first dance. The second song that came on the juke box, the go-go dancer who we later identified as Beverly Diacou, she again grabbed ahold of the pole and at this time she leaned over the side of the go-go stage to where a male patron was sitting.

"Mr. Lumpe: If it please the Commission, at this time I will object and move that any testimony and also that Violation Number 2 be dismissed. The 8-A violation notice was presented to Mr. Fall on the night in question only stating allowing improper conduct, lewd and lascivious dancing.

"Mr. Connor: She was in the process of dancing when she leaned over the stage and put her buttocks on the patron's lap. I think this is all the same thing.

"Chairman Thomas: Overrule it.

"Q. (By Mr. Connor) Go ahead.

"A. At this time, during her dance, she grabbed ahold of the pole with her buttocks to the patron, sat down on his lap still holding onto the pole and began going back and forth on the patron's lap.

"Q. Was the music still playing?

"A. Yes.

"Q. And was her body stil [sic] vibrating to the music?

"A. Yes.

"Q. And she had her buttocks on the patron's lap; is that right?

"A. Yes.

."Q. What happened then?

"A. During this song on the juke box, she did this to another male patron on the opposite side of the go-go stage."

We find the order of the commission and the judgment of the Common Pleas Court was supported by reliable, probative and substantial evidence, in accordance with law. Accordingly, the judgment is affirmed and this appeal dismissed.

*Judgment affirmed.*

TROOP, P. J., and WHITESIDE, J., concur.