**INSIGHT ENTERPRISES, INC., Appellant,**

**v.**

**LIQUOR CONTROL COMMISSION, Appellee.**

[Cite as *Insight Enterprises, Inc. v. Ohio Liquor Control Comm.* (1993), 87 Ohio App.3d 692.]

Court of Appeals of Ohio,
Franklin County.

No. 92AP–1687.

Decided on May 13, 1993.

*John A. Connor, II, Co., John A. Connor II* and *Darrell E. Fawley, Jr.,* for appellant.

*Lee Fisher,* Attorney General, and *Kurt O. Gearhiser,* Assistant Attorney General, for appellee.

Deshler, Judge.

This is an appeal from a judgment of the Franklin County Court of Common Pleas, which affirmed an order of the Ohio Liquor Control Commission ordering a limited suspension of appellant's liquor license.

Appellant, Insight Enterprises, Inc. ("Insight"), is the operator of a bar known as the Desert Rose, located in Lancaster, Ohio. Insight was originally cited for three violations of Ohio Adm.Code 4301:1–1–52 ("Regulation 52"). On December 12, 1989, the matter was heard before the Ohio Liquor Control Commission ("commission"). Two of the three violations were dismissed at that time and Insight stipulated to the report of the investigating officer of the Lancaster Police Department.

The sole violation which remained in question at the hearing read as follows:

"Violation # 1—On or about July 28, 1989, your agents and/or employees, RON HART and/or LUCIAN ANDERSON and/or T.C. 'LNU' did knowingly and/or willfully allow in and upon or about the permit premises, improper conduct in that your agents and or employees, RON HART and/or LUCIAN ANDERSON and/or T.C. 'LNU' did allow go-go dancers to have physical contact with patrons—in violation of 4301:1–1–52, a regulation of the Ohio Liquor Control Commission."

The investigating officer's report set forth that, on July 28, 1989, she went to the Desert Rose to investigate complaints of pornographic activity in connection with the Wednesday Male Revue presented by the bar. The officer observed performances by four successive male dancers. The first dancer, Ron Hart, engaged in a strip tease followed by dancing (dressed only in a G-string) with several patrons, kissing of patrons, and other unspecified physical contact with patrons. The second dancer, Lucian Anderson, also stripped down to a G-string, kissed patrons, and at one point sat astride a customer and rubbed his buttocks against her. The third dancer, identified as "T.C.," engaged in a similar strip-tease performance. In addition, he was observed to rub his discarded trousers between his legs and simulate masturbation. And this dancer's G-string was apparently too small and partially exposed his genitals. The fourth dancer, Tom, also stripped and had physical contact with the customers. At various times, this fourth dancer rubbed his belt between his legs, simulated masturbation, and concluded by borrowing a patron's shoe, inserting it into his G-string, and simulating intercourse with it. At various times during the show, all four dancers mingled with the crowd and accepted money stuffed into their G-strings. The investigating officer observed that some patrons would look into the dancer's G-strings as they tendered money to the dancer. The investigating officer further reported that at no time during the show was it announced that physical contact

with the dancers was prohibited. The bar's employees continued to serve alcohol throughout the performance. Additional testimony at the hearing came from the assistant managers of the Desert Rose, and the president of Insight.

The assistant managers, Joe Williams and Lisa Meyers, testified that they were working on the night of the alleged violation. They observed the dancers kissing and touching patrons, and from the outset determined that it was "too much." After the four dancers had successively completed their performances, Williams went to their dressing room to advise them that they were not to kiss or touch the patrons.

The president of Insight, Chris Miller, testified that he was not at the Desert Rose on the night in question. He testified that he had, on previous occasions, observed the group of dancers involved and that they had remained on those occasions within understood guidelines. Miller further testified that as a result of the report he received from his assistant managers, he had canceled all further engagements of this group of dancers at his club. Miller stated that the dancers were self-managed and that their contract provided that they would not be paid if the bar were cited by the Liquor Control Commission as a result of the show. Miller further stated that he had discontinued any and all male revue features at his bar because it was "virtually impossible" to prevent the dancers from going into the crowd and having physical contact with patrons.

At the conclusion of the hearing, the commission issued an order suspending Insight's liquor permit for three days, with the alternative of paying a $300 fine. Insight filed a motion for reconsideration, and, on February 15, 1990, the commission affirmed its original order. Insight appealed to the Franklin County Court of Common Pleas pursuant to R.C. 119.12. The court of common pleas, by a decision rendered August 31, 1992, affirmed the decision of the commission.

Insight appeals from this judgment and brings the following single assignment of error:

"The lower court erred in finding the decision of the Liquor Control Commission was supported by reliable, probable [*sic*] and substantial evidence and was in accordance with law."

In support of this assignment of error, Insight argues that Regulation 52's restrictions should be read in light of contemporary standards of popular entertainment; that the physical contact between dancers and patrons cited as a violation is not specifically prohibited by Regulation 52; and that the dancers involved were independent contractors rather than agents or employees of Insight, so that Regulation 52's requirement of scienter on the part of the permit holder or his agent was not established by evidence before the commission.

■ The standard of review for appeals under R.C. 119.12 is whether the commission's order is supported by reliable, probative and substantial evidence and is in accordance with law. *Our Place v. Ohio Liquor Control Comm.* (1992), 63 Ohio St.3d 570, 589 N.E.2d 1303. We will examine the record and the commission's decision in light of Regulation 52, which reads as follows:

"No permit holder, his agent, or employee shall knowingly or willfully allow in, upon or about his licensed premises improper conduct of any kind, type or character; any improper disturbances, lewd, immoral activities or brawls; or any indecent, profane or obscene language, songs, entertainment, literature, pictures, or advertising materials; nor shall any entertainment consisting of the spoken language or songs which can or may convey either directly or by implication an immoral meaning be permitted in, upon or about the permit premises.

"Entertainment consisting of dancing, either solo or otherwise, which may or can, either directly or by implication, suggest an immoral act is prohibited * * *."

■ Addressing first Insight's contention that "lewd, immoral activities" and suggestive dancing under Regulation 52 must be evaluated with an eye towards current cultural standards observed elsewhere in the entertainment business, we need only remark that state regulation of liquor sales operates independently of obscenity laws or prevailing societal standards. "[W]hatever the generally accepted mores may be at a particular time and place and in particular circumstances outside permit premises, a permit holder must conduct his business in a manner designed to maintain public decency and good order." *Angola Corp. v. Liquor Control Comm.* (1972), 33 Ohio App.2d 87, 90, 62 O.O.2d 142, 144, 292 N.E.2d 886, 889. Regulation 52 was promulgated under R.C. 4301.03, which charges the commission with the authority to adopt regulations necessary to maintain "public decency, sobriety, and good order" in licensed premises. R.C. 4301.03(B). Even if, as Insight points out, Regulation 52 does not specifically bar physical contact between dancers and patrons, such conduct cannot be said to encourage decency and good order. See *Friedman v. Liquor Control Comm.* (Mar. 5, 1968), Franklin App. No. 8938, unreported; *Benny's Inc., v. Liquor Control Comm.* (Apr. 15, 1969), Franklin App. No. 9268, unreported.

The Ohio Supreme Court has stated that: "The obvious 'harmful potentialities' when the sale of intoxicating beverages occurs in retail outlets necessitates that the liquor industry be strictly regulated, and that regulation includes not only the sale of liquor but also the conditions and circumstances surrounding the liquor premises." *Salem v. Liquor Control Comm.* (1973), 34 Ohio St.2d 244, 245, 63 O.O.2d 387, 388, 298 N.E.2d 138, 140. In *Salem*, the court went on to point out that although "[Regulation 52] is in general terms, to specify all of the acts which might offend public decency, sobriety and good order, would require a regulation which would go on *ad infinitum*." *Id.* at 247, 63 O.O.2d at 388, 298 N.E.2d at

141, citing *A.B. Jac v. Liquor Control Comm.* (1972), 31 Ohio App.2d 9, 60 O.O.2d 60, 285 N.E.2d 763.

■ It is clear the commission is not required to enumerate every possible variety of human conduct which might present "harmful potentialities" in the context of retail liquor sales. Even if physical contact is not specifically prohibited by Regulation 52, the testimony of appellant's own assistant managers was that the dancer's conduct was "too much" from the outset. We therefore cannot agree with appellant's contention that such conduct is any less a threat to the public decency and good order which Regulation 52 is formulated to promote, and cannot give rise to a violation of the regulation, merely because not specifically described therein as prohibited.

■ We next address appellant's contention that the commission's statement of violation is flawed because it imputes scienter to the permit holder through the knowledge of independent contractors, rather than agents or employees.

It is true that the statement of violation issued by the commission might have avoided possible complications if it were worded to state that the assistant managers on duty, rather than the dancers themselves, allowed the prohibited conduct. Regulation 52 does require that it be "the permit holder, his agent or employee" that knowingly or willfully permitted the improper conduct. The simplest course in this case would have been to find the necessary scienter on the part of the assistant managers, who were without question employees of the permit holder and did permit three more dancers to perform after noting the improper conduct of the first.

Nevertheless, this court has previously held that, regardless of their nominal status as independent contractors, dancers are agents of the permit holder for the purposes of Regulation 52. *Willies Joint Venture v. Liquor Control Comm.* (June 27, 1985), Franklin App. No. 85AP-156, unreported. This is consistent with our decisions in other areas of state regulation that a liquor permit holder may not insulate himself from liability by structuring his business in a manner that leaves all those actually operating the business as independent contractors, with no implication of the permit holder for any violations occurring on the premises. See *98 Lounge, Inc. v. Ohio Bur. of Emp. Serv.* (Mar. 26, 1987), Franklin App. No. 86AP-959, unreported, 1987 WL 8938.

Since we consider the dancers in this case to have been acting as agents of the permit holder in supplying the entertainment which led to the violation of Regulation 52, there is no question that a violation occurred. The dancers did knowingly and willfully have physical contact with patrons, by the admission of Insight's own assistant managers and the stipulated report of the investigating officer. This is conduct of the type contemplated by the prohibitions of Regula-

tion 52 as likely to compromise public decency, sobriety and good order under R.C. 4301.03.

 Based upon the foregoing, and our review of the record, there was therefore no abuse of discretion on the part of the Franklin County Court of Common Pleas in affirming the decision of the commission. The appellant's assignment of error is overruled and the decision of the Franklin County Court of Common Pleas is affirmed.

*Judgment affirmed.*

BOWMAN and JOHN C. YOUNG, JJ., concur.