DECISION
This is an appeal by appellant, Jane Beck, from a judgment of the Franklin County Court of Common Pleas, affirming an order of the Ohio Liquor Control Commission, ("commission") denying appellant's application for the transfer of ownership and location of a class D-5 liquor license.
On February 11, 1997, appellant filed an application for a transfer of ownership and location of a D-5 liquor license from 221 East Main Street to 215 East Main Street, Ashland, Ohio. Objections were filed with the Division of Liquor Control by the Ashland City Council ("city") and a local church. The Superintendent of the Division of Liquor Control issued an order overruling the objections, finding that the city was "unable to present sufficient evidence to show that that the applicant is unfit to engage in the retail sale of alcoholic beverages or that this business would adversely impact the peace, sobriety and good order of this community."
The city filed an appeal from the order and the matter came for hearing before the commission on December 2, 1997. The commission subsequently issued an order rejecting the appellant's transfer of location and ownership.
The trial court, in a decision rendered on September 10, 1998, affirmed the order of the commission. Specifically, the court held that, "[w]hile a close call, there is some * * * substantial, reliable and probative evidence to support the denial by the Liquor Commission based on location only."
On appeal, appellant sets forth the following single assignment of error for review:
 THE COURT OF COMMON PLEAS ERRED WHEN IT FOUND THAT THE ORDER OF THE LIQUOR CONTROL COMMISSION WAS SUPPORTED BY RELIABLE, PROBATIVE AND SUBSTANTIAL EVIDENCE AND WAS IN ACCORDANCE WITH LAW.
In Marwan, Inc. v. Liquor Control Comm. (1994), 93 Ohio App.3d 229,232-233, the court noted that:
 The standard of review which governs administrative appeals under R.C. 119.12 is whether the commission's order denying renewal is supported by reliable, probative and substantial evidence and is in accordance with law. Our Place, Inc. v. Ohio Liquor Control Comm. (1992), 63 Ohio St.3d 570, 571, 589 N.E.2d 1303, 1305; Insight Enterprises, Inc. v. Ohio Liquor Control Comm. (1993), 87 Ohio App.3d 692, 696, 622 N.E.2d 1145, 1147. The Supreme Court has further defined the quality of the required evidence as follows:
 "The evidence required by R.C. 119.12 can be defined as follows: (1) `Reliable' evidence is dependable; that is, it can be confidently trusted. In order to be reliable, there must be a reasonable probability that the evidence is true. (2) `Probative' evidence is evidence that tends to prove the issue in question; it must be relevant in determining the issue. (3) `Substantial' evidence is evidence with some weight; it must have importance and value." Our Place, supra, 63 Ohio St.3d at 571, 589 N.E.2d at 1305.
The issue before this court is whether the trial court abused its discretion in finding that there was reliable, probative and substantial evidence in the record to support the commission's denial of the proposed transfer. In the present case, the city objected to the proposed transfer on the basis that "the place for which the permit is sought is so located with respect to the neighborhood that substantial interference with public decency, sobriety, peace o good order would result" from the approval of such transfer. The trial court, in affirming the commission's denial of the transfer, found that there was some evidence to support the commission's decision based on the fact that previous bars occupying the proposed permit premises negatively impacted a body shop, Dairy Queen, church and day care center in the area.
At the hearing, the city presented the testimony of five witnesses: Gary L. Johnson, the owner of a body shop located at 211 East Main Street; Reverend Ignatious David, the minister of the Emanuel United Methodist Church; Cathy Wigal, the director of the Ashland Training Center Preschool and Childcare Center; Charles C. Day, the owner of a Dairy Queen located across the street from the proposed permit premises; and William Miracle, the Chief of Police for the city of Ashland.
Appellant contends that the testimony presented by the city's witnesses primarily involved complaints regarding past activities when two prior establishments, Lydia King's (formerly located at 215 East Main Street) and Brandy's (formerly located at 221 East Main Street), were in operation at the same time. Appellant maintains that there was a lack of reliable, probative and substantial evidence to sustain the reasons provided for rejecting the transfer.
In response, the commission argues that the application was properly denied based on the provisions of R.C.4303.292(A)(2)(c) and R.C. 4303.292(B)(1).
R.C. 4303.292(A)(2)(c) states:
 (A) The division of liquor control may refuse to issue, transfer the ownership of, or renew, and shall refuse to transfer the location of any retail permit issued under this chapter if it finds:
* * *
(2) That the place for which the permit is sought:
* * *
 (c) Is so located with respect to the neighborhood that substantial interference with public decency, sobriety, peace, or good order would result from the issuance, renewal, transfer of location, or transfer of ownership of the permit and operation thereunder by the applicant.
R.C. 4303.292(B)(1) provides:
 (B) The division of liquor control may refuse to issue or transfer the ownership of, and shall refuse to transfer the location of any retail permit issued under this chapter if it finds:
 (1) That the place for which the permit is sought is so situated with respect to any school, church, library, public playground, or hospital that the operation of the liquor establishment will substantially and adversely affect or interfere with the normal, orderly conduct of the affairs of those facilities or institutions.
Upon review, we agree with appellant's assertion that much of the evidence presented at the hearing involved testimony by witnesses concerning problems that existed when two previous permit holders operated bars at 215 East Main Street (Lydia King's) and 221 East Main Street (Brandy's). For instance, Charles Day, who operates a Dairy Queen across the street from the proposed premises, testified regarding broken bottles and glass in his parking lot as a result of the prior establishments. He stated that these problems were prevalent when "both Lydia King's bar * * * and Brandy's was operating." (Tr. 53.) Day also testified that the former owner of Lydia King's ran advertisements in the local college newspaper inviting patrons to park in Day's parking lot. On cross-examination, Day stated that his concern was with the way the former businesses were run, and he acknowledged that he knew nothing about the applicant seeking transfer of the permit. When asked whether he was merely assuming that the owner of the proposed permit premises would act in a similar manner, Day stated, "[i]t goes with the business, I think." (Tr. 57-58.)
Gary Johnson, the owner of a body shop located next to the proposed permit premises, testified that his main concern was that there would be parking problems based on past incidents when the prior establishments were in operation immediately adjacent to his property. Further, Johnson's testimony concerning parking problems was, as noted by appellant, directed primarily toward past incidents involving Brandy's establishment at 221 East Main Street as opposed to the location of the proposed permit premises at 215 East Main Street.
Johnson also testified about past problems with litter and broken bottles involving the two prior establishments. However, Johnson stated that his objection was not directed at the applicant. In fact, Johnson stated that he had known the appellant for a number of years and that he did not believe she would allow a recurrence of the earlier problems based on "what she tells me." (Tr. 26.)
Much of the remaining testimony was speculative regarding the issue of whether the location would cause substantial interference with public decency, sobriety, peace or good order or substantially and adversely affect facilities such as churches. For instance, the Reverend Ignatious David testified that there were no direct adverse affects to his church when Brandy's was in operation, but he felt that the church was affected "indirectly" based upon "evidence of beer and liquor bottles being thrown in my front lawn by the neighborhood by the church." (Tr. 35.) Reverend David could not "specifically say" whether bottles on church property might have come from the patrons of the two former establishments. (Tr. 38.) Reverend David also stated that the position of his church is to "abhor the use of liquor in any form," and thus he would oppose any permit application within five hundred feet of his church. (Tr. 33.)
Cathy Wigal, the director of the Ashland Training Center Preschool and Childcare Center, located at 228 Maple Street, testified that when Brandy's was in operation, there was broken glass in the area of the preschool. She also speculated that parents looking at the facility "may choose somewhere else because of a bar being located so close." (Tr. 43.)
Appellant notes that the proposed transfer in the instant case would involve the operation of only one permit premises, and further asserts there was no evidence that she would operate her business in the same manner as the prior establishments. Appellant testified at the hearing that a prior establishment she owned in the village of Jeromesville was a "bar, restaurant" type, and that she intended to have a similar operation in Ashland, serving "mostly food," with liquor "just a choice for the people." (Tr. 109.) Appellant noted that the former premises at 215 East Main Street did not have a full service kitchen. Appellant has remodeled the premises, and has added a full service kitchen. According to appellant, the premises has "a small bar with eight bar stools," but contains "mostly tables and chairs so they can sit down and eat." (Tr. 111.)
Upon review, we agree with appellant's contention that the trial court abused its discretion in finding that the order of the commission was supported by reliable, probative and substantial evidence. The commission cites Our Place, Inc. v.Ohio Liquor Control Comm. (1992), 63 Ohio St.3d 570, for the proposition that the location of a proposed permit establishment can be the sole basis for denying an application. While we do not disagree with the commission's contention that location alone may be the sole basis for denying an application, "the location must be such that issuance, transfer, or renewal of the permit would `substantially interfere' with public decency, sobriety, peace or good order." Elayan Bros. v. Liquor Control Comm. (September 12, 1997), Montgomery App. No. 16278, unreported, citing Our Place,supra, at 573. In Monahan v. Liquor Control Comm. (Mar. 6, 1990), Franklin App. No. 89AP-591, unreported (1990 Opinions 720, 731), this court held that the express terms of R.C. 4303.292(A)(2)(c) require a showing that "a `substantial interference with public decency, sobriety, peace or good order would result' from the issuance of a permit," meaning that "in making the determination, the trier-of-fact must conclude that such an interference would likely result."
As previously discussed, there was considerable testimony at the hearing by local property owners expressing concerns over past incidents when two former bars were operating in the area at the same time. However, much of the evidence regarding the operation of the former establishments was simply not probative of the proposed transfer at issue involving a bar and restaurant operation. As noted, one of the city's own witnesses stated that he was not concerned that appellant would operate her establishment in the same manner as the former permit holders. Further, the remaining testimony challenging the transfer primarily involved general or speculative concerns. This court has previously held that "[g]eneral, speculative evidence that may well be applicable as an argument against most permit applications is insufficient to establish `substantial interference' with public decency, sobriety, peace or good order."Service Station Holdings, Inc. v. Liquor Control Comm. (June 27, 1996), Franklin App. No. 96APE01-22, unreported (1996 Opinions 2607, 2613).
Accordingly, we conclude that the trial court erred in affirming the order of the commission and we therefore sustain appellant's single assignment of error.
Based upon the foregoing, appellant's assignment of error is sustained, the judgment of the trial court is reversed and this matter is remanded to the trial court for further proceedings in accordance with law and consistent with this opinion.
Judgment reversed, and cause remanded.
TYACK, J., and LAZARUS, P.J., concur.