244

SALEM, D. B. A. SALEM'S RESTAURANT, APPELLANT, *v.* LIQUOR CONTROL COMMISSION, APPELLEE.

(No. 72-729—Decided June 20, 1973.)

*Messrs. Blakemore, Rosen, Miller & Norris, Mr. Robert W. Blakemore* and *Mr. Michael B. Hendler,* for appellant.

*Mr. William J. Brown,* attorney general, and *Mr. John A. Connor, II,* for appellee.

*Per Curiam.* The obvious "harmful potentialities" when the sale of intoxicating beverages occurs in retail outlets necessitates that the liquor industry be strictly regulated, and that regulation includes not only the sale of liquor but also the conditions and circumstances surrounding the liquor premises. *Solomon* v. *Liquor Control Comm.* (1965), 4 Ohio St. 2d 31, 34; *Ziffrin* v. *Reeves* (1939), 308 U. S. 132; *Major Liquors* v. *Omaha* (1972), 188 Neb. 628, 198 N. W. 2d 483.

Realizing that the liquor industry requires such regulation, the states have not granted irrevocable permits in the nature of vested property rights to retail liquor businesses, but instead have issued "licenses." A "license" has been consistently considered by courts as a "personal and temporary permit or *privilege,* and not a natural right, to be enjoyed only so long as the conditions and restrictions governing its continuance are complied with * * *." (Emphasis added.) 45 American Jurisprudence 2d 568, Section 115; *State, ex rel. Zugravu,* v. *O'Brien* (1935), 130 Ohio St. 23; *Abraham* v. *Fioramonte* (1952), 158 Ohio St. 213.

In Ohio, the statutory grant of authority to police liquor permit licenses is found in R. C. 4301.03(B), which provides that regulations may be adopted to maintain "public decency, sobriety, and good order in any place licensed under such permits."

With the above-quoted purpose in mind, Regulation LCc-1-52, adopted by the commission, reads, in pertinent part:

"No permit holder, his agent, or employee shall knowingly or willfully allow in, upon or about his licensed premises improper conduct of any kind, type or character * * *."

At the outset, it should be noted that (in addition to

the special "license" relationship between the state and permit holder) what is in evidence here is an administrative regulation which is applied in a civil proceeding, not a criminal statute. If the wording of the regulation is general in nature, the needed specificity commanded constitutionally in a criminal statute is not required. See *Dandridge* v. *Williams* (1970), 397 U. S. 471, 484-85; *Hodges* v. *Fitle* (1971), 332 F. Supp. 504, 510; *Tahiti Bar, Inc.* (1959), 395 Pa. 355, 364, 150 A. 2d 112; *B. P. O. of Elks* v. *Board of Liquor Control* (1957), 105 Ohio App. 181, 183.

Appellant's principal assertion is confined to the wording of the regulation, and, specifically, the phrase "improper conduct"—the claim being that the regulation does not sufficiently apprise a permit holder of the explicit standards needed to guide in the proper supervision of appellant's establishment.

We are of the opinion that to comply with appellant's assertion, that Regulation LCc-1-52 must be less vague, would require the commission to spell out in detail not only the proper attire to be worn in permit premises, but also to detail in its regulations the host of other conditions surrounding the regulation of the industry. We find appellant's contention to be without merit, because the statutory relationship created between commission and licensee never intended such a result.

To the contrary, in our opinion a licensee, by consenting to abide by the liquor statutes and regulations when applying for his license, has thereby bound himself to operate as the Liquor Control Commission believes is consistent with "public decency, sobriety, and good order." *Angola Corp.* v. *Liquor Control Comm.* (1972), 33 Ohio App. 2d 87, 90-91. See, also, *Crowley* v. *Christensen* (1890), 137 U. S. 86, where, at page 91, it is stated:

"* * * Not only may a license be exacted from the keeper of the saloon before a glass of his liquors can be thus disposed of, but restrictions may be imposed as to the class of persons to whom they may be sold, and the hours of the day and the days of the week on which the

saloons may be opened. Their sale in that form may be absolutely prohibited. It is a question of public expendiency and public morality, and not of federal law. The police power of the state is fully competent to regulate the business—to mitigate its evils or to suppress it entirely. There is no inherent right in a citizen to thus sell intoxicating liquors by retail; it is not a privilege of a citizen of the state of or a citizen of the United States. As it is a business attended with danger to the community it may, as already said, be entirely prohibited, or be permitted under such conditions as will limit to the utmost its evils. The manner and extent of regulation rest in the discretion of the governing authority."

The same question of the vagueness of Regulation LCc-1-52 was raised in *A. B. Jac* v. *Liquor Control Comm.* (1972), 31 Ohio App. 2d 9, where two of the charges of "improper conduct" were identical to that presented here. The court, at page 11, stated:

"The regulation is in general terms, but considering the ingenuity of man, to specify all of the acts which might offend public decency, sobriety and good order, would require a regulation which would go on *ad infinitum.* When considered in conjunction with the statute and interpretations, we do not find the regulation vague or overbroad."

In addition to the difficulty noted in *A. B. Jac, supra,* we believe that regulations of this sort would only invite enterprising licensees to skirt the rules, thereby limiting the effectiveness of the commission, the statutes and the regulations.

The problem was again presented in *Portland* v. *Derrington* (1969), 253 Ore. 289, 451 P. 2d 111, where an ordinance forbade females in food or alcoholic establishments to be dressed so that "one or both breasts are wholly or *substantially* exposed to public view." (Emphasis added.) The court, at page 294, noted:

"The vagueness question in the case at bar underscores the difficuty legislators have in attempting to translate clothing mores into positive law. If the ordinance were

drawn so as to proscribe only the total exposure of the mammary structures, the city argues, it would be an invitation to evasion by the use of the token coverings referred to in the briefs as 'pasties.' ''

See, also, *New Orleans* v. *Kiefer* (1964), 246 La. 305, 164 So. 2d 336, wherein the Supreme Court of Louisiana, in upholding a criminal statute which prohibited female entertainers from ''mingling'' with customers, stated:

''* * * this does not mean that words of a general nature, which may be used to describe numerous and varied acts or events necessarily lack the precision to satisfy constitutional requirements. For such words, when read in proper context with the legislative purpose may attain a special and restrictive meaning which connotes with unmistakable clarity the character of the acts prohibited.''

Appellant has additionally asserted that the conduct proscribed here, even if stated by regulation, offends First Amendment rights of free expression, since it does not fall under the definition of obscenity stated in *Roth* v. *United States* (1957), 354 U. S. 476.

In *California* v. *LaRue* (1972), 409 U. S. 109, 34 L. Ed. 2d 342, the Supreme Court of the United States upheld the constitutionality of liquor regulations proscribing certain types of conduct which had been occurring in California taverns. The majority opinion, at page 116, freely admitted that if the conduct proscribed was done outside the confines of the tavern, it would then enjoy First Amendment protection, but that, considering the grant given them by the Twenty-First Amendment, the states are possessed of substantial power in regulating the liquor industry.

We view that opinion as additional proof of a clear grant of authority which the liquor commission is duty bound to follow, and that a legitimate interest exists in the state to compel operators of liquor premises to affirmatively maintain their businesses in conformity with the appropriate statutes and regulations.

There is certainly little argument here that the dancer, thinly clad as she was, created an atmosphere which at-

tracted many a prospective customer to enter appellant's door, to sit down, and to buy a drink.

Whether more or fewer customers would patronize appellant's tavern if this dancer was not present, is not of concern here. The point is that appellant knowingly allowed this mode of entertainment to occur on the licensed premises so that his business might flourish.

In short, the dancer represented a "commercial product" (see *Fitle,* 332 F. Supp. 504, 509), and the commission, viewing this "product" as improper, has seen fit to regulate it by suspending the holder's liquor permits. And we cannot say that the commission was wrong in its belief that a thinly-garbed dancer, dancing simultaneously with the serving of alcoholic beverages in a tavern, does not adhere to the good order and discipline required on liquor permit premises. See the unreported decision in *Friedman* v. *Liquor Control Comm.* (1968), No. 8938, of the Court of Appeals for Franklin County.

Our opinion is in no way an indication that the commission is statutorily possessed of an absoluteness to dictate without a compelling state interest all forms of conduct, since every administrative regulation has to survive an initial test of reasonableness. 2 American Jurisprudence 2d 131, Section 303.

From the facts in evidence, in our view the order of the commission is consistent with the intent of R. C. 4301.03(B), and Regulation LCc-1-52 not being uncertain of meaning, vague or indefinite, we do not consider the finding of the commission arbitrary or unreasonable.

*Judgment affirmed.*

O'Neill, C. J., Herbert, Corrigan, Stern, Celebrezze, W. Brown and P. Brown, JJ., concur.