OPINION
Plaintiff-appellant Dayton Tavern, Inc., dba Brandy's, appeals from an order affirming a decision of defendant-appellee Ohio Liquor Control Commission, ordering that Brandy's serve a six-day suspension of its liquor license, or pay a $1,200 forfeiture, for committing multiple violations of Ohio Adm. Code4301:1-1-52 ("Regulation or Rule 52"), by allowing improper dancing at its establishment. Brandy's, which is also known as Key West, argues that the trial court erred in upholding the commission's order, because it was not supported by substantial, reliable, and probative evidence, and it was not in accordance with law, since Regulation 52 is unconstitutionally vague and overbroad, in violation of Section 11, Article I of the Ohio Constitution, and the First and Fourteenth Amendments of the United States Constitution.
We conclude that the trial court did not abuse its discretion in affirming the commission's order, since the order was supported by substantial, reliable, and probative evidence. However, we also conclude that Regulation 52 is facially overbroad, in violation of the United States and Ohio Constitutions. Accordingly, the judgment of the trial court is Reversed, and judgment is entered for Key West, reversing and vacating the order of the commission imposing sanctions.
 I
Key West, a liquor permit holder, is a nightclub featuring semi-nude dance performances. In April, 1996, the Department of Liquor Control contacted local police departments, requesting their assistance in investigating several complaints it had received regarding Key West. As a result of the ensuing investigation, Key West was cited in two separate cases for multiple violations of the Ohio Liquor Control Commission's regulations. In Case No. 1509-96, Key West was charged with violating Regulation 52 by allowing female dancers to expose their "bare breasts" (Violation # 1), and "pubic areas" (Violation #2).[1] In Case No. 90-97, Key West was charged with violating Regulation 52 by allowing female dancers "to expose their breasts with pasties covering only the aerolo [sic, presumably areola] and/or nipple portion of the breasts."
A hearing on both cases was held before the Ohio Liquor Control Commission on February 12, 1997. The commission found that Key West had committed both of the violations charged in Case No. 1509-96, and ordered it to pay a forfeiture of $1,200, or to serve a six-day suspension. The commission also found that Key West had committed the single violation charged in Case No. 90-97, but imposed no penalty for that violation. Key West appealed the commission's decision to the Montgomery County Court of Common Pleas, pursuant to former R.C. 119.12.[2] The trial court affirmed the commission's decision.
Key West appeals from the trial court's order affirming the commission's decision.
 II
Key West's First Assignment of Error states:
 THE COURT OF COMMON PLEAS OF MONTGOMERY COUNTY, OHIO ERRED IN SUSTAINING THE COMMISSION'S ORDER BECAUSE IT WAS NOT SUPPORTED BY SUBSTANTIAL, RELIABLE AND PROBATIVE EVIDENCE.
In reviewing an order issued by an administrative agency, a common pleas court must affirm the agency's order if it finds that there is reliable, probative, and substantial evidence to support it, and it is in accordance with the law. Lavery v. Ohio LiquorControl Comm. (1996), 112 Ohio App.3d 494, 497. In reviewing an administrative order, a common pleas court generally must defer to the administrative resolution of evidentiary conflicts. ParamountAuto, Inc. v. Motor Vehicle Dealers Bd. (1997), 118 Ohio App.3d 511,514. An appellate court's review of the common pleas court's decision is even more limited; the appellate court simply determines whether the common pleas court abused its discretion.Id. On questions of law, however, an appellate court's review is plenary. MacKnight v. Lake Cty. Dept. of Human Serv. (1995),107 Ohio App.3d 181, 184.
Regulation 52 provides as follows:
 No permit holder, his agent, or employee shall knowingly or willfully allow in, upon or about his licensed premises improper conduct of any kind, type or character; any improper disturbances, lewd, immoral activities or brawls; or any indecent, profane or obscene language, songs, entertainment, literature, pictures, or advertising materials; nor shall any entertainment consisting of the spoken language or songs which can or may convey either directly or by implication an immoral meaning be permitted in, upon or about the permit premises.
 Entertainment consisting of dancing, either solo or otherwise, which may or can, either directly or by implication, suggest an immoral act is prohibited. Nor shall any permit holder, his agent, or employee possess or cause to have printed or distributed any lewd, immoral, indecent, or obscene literature, pictures or advertising material.
Allowing a female to dance topless, with only pasties covering the nipple and areola portion of her breasts, constitutes "improper conduct" for purposes of Regulation 52. Salem v. OhioLiquor Control Comm. (1973), 34 Ohio St.2d 244.
In Case No. 1509-96, violation #1, Key West was cited for allowing its dancers to expose their "bare breasts" in contravention of Regulation 52. Key West argues that its dancers wore latex pasties covering the nipple and areola portion of their breasts, and, therefore, could not have exposed their bare
breasts. In furtherance of this argument, Key West contends that the law enforcement officers admitted that the dancers were wearing pasties.
Initially, the only law enforcement officer who testified that the dancers were wearing pasties was Agent Steven M. Clapp, who testified about the events of September 28, 1996, which formed the basis for the violation charged in Case No. 90-97. Detective Kraig Krivis testified about the events of April 26, 1996, which formed the basis for the violations charged in Case No. 1509-96. Krivis testified that while he and a second officer were inside Key West, working undercover, three female dancers exposed their breasts to him and the second officer while dancing for them. Although Krivis did not expressly testify that the dancers exposed their bare breasts to the officers, as the trial court found, that was, nevertheless, a reasonable construction of Krivis' statement that the dancers "exposed their breasts" to him and his fellow officer. Furthermore, while Key West's manager, Delbert Lee Hale, testified that the dancers were wearing pasties on April 26, 1996, the trial court was entitled to defer to the commission's resolution of the evidentiary conflict, see Paramount Auto, Inc.,supra, particularly where there was testimony indicating that Key West's dancers did not always follow the management's rules.
In Case No. 1509-96, Violation #2, Key West was cited for allowing one of its dancers to expose her "pubic area." Key West acknowledges that one of its dancers did, in fact, expose her pubic region to Detective Krivis, but contends that the dancer was simply adjusting her costume because it was too small for her. Key West asserts that it neither condoned nor permitted the dancer's actions, and that it fired the dancer following the allegation. Thus, Key West asserts, the trial court abused its discretion in upholding the commission's finding with respect to Violation #2. We disagree.
Under the plain meaning of Regulation 52, an establishment can be cited for violating the provision if either the permit holder, or its agents or employees, knowingly or willfully permit improper conduct to occur on the premises. Dancers are considered agents of the permit holder for purposes of Regulation 52.Insight Enterprises, Inc. v. Ohio Liquor Control Comm. (1993),87 Ohio App.3d 692, 697.
Here, Hale testified that the dancer whose actions prompted the citation set forth in Violation #2 indicated that she accidentally exposed her pubic area while adjusting her costume. However, under questioning from one of the commissioners, Hale conceded that he did not believe the dancer's explanation, and, therefore, fired her. Thus, Hale essentially conceded that the dancer was acting knowingly when she exposed her pubic region; that testimony, together with the testimony of Detective Krivis, was sufficient to prove the violation.
In Case No. 90-97, Key West was cited for allowing female dancers to expose their breasts, with only pasties covering the nipple and areola portion of their breasts. Key West argues that when it allowed its female dancers to expose their breasts, covered only by pasties, it was reasonably relying on a "policy statement," which it had introduced into evidence at the hearing. The policy statement, which allegedly came from the Ohio Department of Public Safety, reads in relevant part as follows:
 The [dancer's] attire must at a minimum opaquely cover the nipple and aeriola [sic] portion of the female breast. "Pasties" or other coverings are sufficient as long as the entire nipple and aeriola [sic] portion are rendered invisible. These coverings cannot be designed or decorated in such a way as to simulate the appearance of the nipple and aeriola [sic]. (Emphasis added.)
Initially, it is unclear where this policy statement came from, or what weight, if any, it should be accorded. At the administrative hearing, counsel for the Ohio Department of Public Safety informed the commission that the policy statement was never promulgated as a rule, and did not represent the department's policy. Furthermore, a liquor establishment can be cited for violating Regulation 52, by allowing a dancer to expose her breasts with only pasties covering the nipple and areola portion of her breasts. Salem, supra.
Even if a permit holder like Key West should have been entitled to rely on this policy statement, Hale's testimony indicates that Key West was not in compliance with the terms of the policy statement. When asked if the pasties simulated the appearance of the nipple or areola portion of the female breast in contravention of the terms of the policy statement, Hale initially replied, "[n]ot in my opinion, no." However, when asked later if the pasties made the dancers appear as if they were bare-breasted, Hale began to equivocate, saying, "I guess it would depend on your interpretation, but you can tell that they have the latex [pasties] on." Finally, when asked if a patron would think that a dancer wearing the latex pasties was not wearing any covering over her breasts, Hale responded, "[f]rom across the room possibly, but if you came within five or six feet, it's obvious that the latex is on." Hale's testimony supports an inference that the dancers at Key West were decorating the latex pasties with make-up to simulate the appearance of a nipple and areola. Moreover, because no penalty was imposed for the violation set forth in Case No. 90-97, Key West was not prejudiced by the commission's findings with respect to that case.
In light of the foregoing, the trial court did not abuse its discretion in affirming the commission's findings that Key West had committed the violations for which it was cited.
Key West's First Assignment of Error is overruled.
 III
Key West's Second Assignment of Error states:
 THE DECISION RENDERED BY THE COURT OF COMMON PLEAS OF MONTGOMERY COUNTY, OHIO MUST BE REVERSED BECAUSE OHIO ADMINISTRATIVE CODE 4301:1-1-52 IS UNCONSTITUTIONALLY OVERBROAD UNDER ART. 1., SECTION 11 OF THE OHIO CONSTITUTION AND THE FIRST AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION.
Key West argues that Regulation 52 is unconstitutionally vague and overbroad, on its face and as applied, in violation of both the United States and Ohio Constitutions.
A statute is unconstitutionally vague if "men of common intelligence must necessarily guess at its meaning and differ as to its application." Connally v. General Construction Co. (1926),269 U.S. 385, 391. A statute is not unconstitutionally vague if it "(1) provides sufficient notice of its proscriptions, and (2) contains reasonably clear guidelines to prevent official arbitrariness or discrimination in its enforcement." Perez v.Cleveland (1997), 78 Ohio St.3d 376, 378. The void-for-vagueness doctrine does not require that a statute be drafted with scientific precision, or that every detail regarding its procedural enforcement be contained therein. Instead, the doctrine "permits a statute's certainty to be ascertained by application of commonly accepted tools of judicial construction, with courts indulging every reasonable interpretation in favor of finding the statute constitutional." Id. at 378-379 (citations omitted).
Under the overbreadth doctrine, even a clear and precise enactment may be struck down "if in its reach it prohibits constitutionally protected conduct." In re Complaint AgainstHarper (1996), 77 Ohio St.3d 211, 224, quoting Grayned v. Rockford
(1972), 408 U.S. 104, 114. In determining whether a legislative enactment or administrative regulation is overbroad, a court must consider whether it "sweeps within its prohibition what may not be punished under the First and Fourteenth Amendments." Grayned,supra, at 115. "In order to demonstrate facial overbreadth, the party challenging the enactment must show that its potential application reaches a significant amount of protected activity."Akron v. Rowland (1993), 67 Ohio St.3d 374, 387. "Only a statute that is substantially overbroad may be invalidated on its face."Houston v. Hill (1987), 482 U.S. 451, 458. A legislative enactment or administrative regulation is substantially overbroad if it is "susceptible of regular application to protected expression." Id. at 467. The overbreadth doctrine has been described as "strong medicine," which has been traditionally used "sparingly and only as a last resort." Broadrick v. Oklahoma
(1973), 413 U.S. 601, 613. "Facial overbreadth has not been invoked when a limiting construction has been or could be placed on the challenged statute." Id.; see, also, In re ComplaintAgainst Harper, supra.
Although the overbreadth and void-for-vagueness doctrines are similar, they are not the same. "The distinction between the doctrine[s] * * * is that the overbreadth doctrine is applicable primarily in the First Amendment area and may render void legislation which is lacking neither in clarity nor precision, whereas the vagueness doctrine is based on the due process clauses of the Fifth and Fourteenth Amendments and is applicable solely to legislation which is lacking in clarity and precision." 16AAmerican Jurisprudence 2d (1998) 380-381, Constitutional Law, Section 411 (footnotes omitted).
In Salem, supra, the Ohio Supreme Court held that Regulation 52 is not unconstitutionally vague, and that interpreting Regulation 52 to prohibit liquor permit holders from allowing females to dance topless, with only pasties covering the nipple and areola portion of their breasts, did not violate the right to free expression guaranteed by the First Amendment. In support of its holding that Regulation 52 is not unconstitutionally vague, the Salem court cited A.B. Jac, Inc. v. Liquor Contol Comm.
(1972), 31 Ohio App.2d 9, which stated:
 [R]egulation [52] is [phrased] in general terms, but considering the ingenuity of man, to specify all of the acts which might offend public decency, sobriety and good order, would require a regulation which would go on ad infinitum.
When considered in conjunction with the statutes [e.g., R.C. 4301.03] and interpretations [of the regulation found in the caselaw], we do not find the regulation vague or overbroad.
A.B. Jac, supra, at 11. (Emphasis added.)
At least two appellate courts have cited Salem for the proposition that Regulation 52 is neither unconstitutionally vague nor overbroad. Deen v. Ohio Liquor Control Comm. (Feb. 19, 1999), Lucas App. No. L-98-1233, unreported; WFO Corp. v. Ohio LiquorControl Comm. (Oct. 31, 1996), Franklin App. No. 96APE05-558, unreported. One appellate court in this state has found Regulation 52 facially overbroad, and overbroad as applied, in violation of the Free Speech Clause in Section 11, Article I of the Ohio Constitution. Cleveland's PM on the Boardwalk, Ltd.
(Jan. 23, 1997), Cuyahoga App. No. 69779, unreported. The Deen
court declined to follow the Eighth Appellate District's decision in Cleveland's PM on the Boardwalk, Ltd., on the ground that the Ohio Supreme Court had "spoken definitively on the issue" inSalem, supra.
Notwithstanding Deen and WFO Corp., the Salem court was not directly confronted with the issue of whether Regulation 52 was unconstitutionally overbroad; instead, it was directly confronted with the issue of whether Regulation 52 was unconstitutionally vague. Thus, the Salem court did not expressly rule on the overbreadth issue, nor speak definitively on it. Nevertheless, by citing A.B. Jac's holding that Regulation 52 is neither vague nor overbroad in support of its own holding that Regulation 52 is not unconstitutionally vague, the Salem court implied that it did not view Regulation 52 as unconstitutionally overbroad.
In support of its contention that Regulation 52 is constitutionally overbroad, Key West cites Cleveland's PM on theBoardwalk, Ltd. v. Ohio Liquor Control Comm., supra, and J.L.Spoons, Inc. v. Brunswick (N.D.Ohio 1998) 181 F.R.D. 354, which found Regulation 52 facially overbroad in violation of theFirst Amendment. Although we are mindful of the language in Salem
indicating that Regulation 52 is not overbroad, as well as the principle that the overbreadth doctrine is "strong medicine," which, traditionally, has been used "sparingly and as a last resort," we nonetheless conclude that Regulation 52 is facially overbroad in violation of the First Amendment to the United States Constitution and the Free Speech Clause found in Section 11, Article I of the Ohio Constitution.
Initially, we do not find that Regulation 52 is unconstitutional as applied in this case. Although nude or semi-nude dancing is marginally entitled to some First Amendment protection, see Barnes v. Glen Theatre, Inc. (1991), 501 U.S. 560,566, the state has a countervailing interest in protecting the health, safety, and morals of the public. See Salem, supra, and44 LiquorMart v. Rhode Island (1996), 517 U.S. 484,116 S.Ct. 1495. "Common sense indicates that any form of nudity coupled with alcohol in a public place begets undesirable behavior." NewYork State Liquor Auth. v. Bellanca (1981), 452 U.S. 714, 718, quoting the New York Legislative Annual 150 (1977). Furthermore, "[e]ntirely apart from the Twenty-first Amendment, the State has ample power to prohibit the sale of alcoholic beverages in inappropriate locations." 44 LiquorMart, supra. Thus, applying Regulation 52 to prohibit liquor permit holders from allowing female dancers to expose their bare breasts, or expose their breasts with pasties covering only the nipple and areola portion of the breast, does not violate the First Amendment, nor Section11, Article I of the Ohio Constitution.
The problem with Regulation 52 is that it is facially overbroad because it sweeps within in its prohibitions a substantial amount of constitutionally protected speech and expressive conduct. Grayned, supra. As stated by the court inJ.L. Spoons, Inc., supra:
 [D]epending upon the particular sensibilities and morals of those currently in charge of enforcing Rule 52, the reading of poetry, the showing of a film, the singing of a song or the performance of an interpretive dance that deals with sexuality, rape, abortion or suicide may subject a liquor permit holder to the revocation of his or her permit. Similarly, owners of comedy clubs that serve alcohol may be punished for allowing comedians who use coarse language, such as Richard Pryor or George Carlin, to perform on stage. Restaurant owners who serve alcohol and also display non-obscene artwork portraying the naked human form may be subject to a penalty. The type of protected First Amendment expression that Rule 52 threatens to punish is seemingly endless. Therefore, Rule 52 is unconstitutionally overbroad, in violation of the First Amendment * * *. Id. at 358.
The court in Cleveland's PM on the Boardwalk, Ltd., supra,
expressed a similar sentiment, stating that under Regulation 52:
 a permit holder would be forbidden from reading or having read out loud "A Street Car Named Desire" or the modern "Victor/Victoria." Furthermore, comics like Eddie Murphy and Richard Pryor would be censored. Also Chaucer's Canterbury Tales, poetry or books describing rape, James Joyce's Ulysses, rap songs, and many television shows would be forbidden under Rule 52.
Additionally, the court in Cleveland's PM on the Boardwalk,Ltd, supra, stated that under Regulation 52 a permit holder could potentially lose his license if one of his customers simply used profane language.
Furthermore, Regulation 52 is not susceptible to a narrowing construction. As the Ohio Supreme Court has stated:
 [I]f it is reasonably possible, validly enacted legislation must be construed in a manner "which will avoid rather than * * * raise serious questions as to its constitutionality." [Citation omitted.] At the same time, a court's construction of a legislative enactment must bear some reasonable relation to the language of the enactment. "[I]t is not the province of the court, under the guise of construction, to ignore the plain terms of a statute or to insert a provision not incorporated therein by the Legislature." (Citation omitted.) Rowland, supra, at 380.
Here, no constitutionally adequate limiting construction of Regulation 52 suggests itself. As the court in Cleveland's PM onthe Boardwalk, Ltd., supra, stated:
 Rule 52 does use language like obscene literature and lewd activity. If lewd was defined in Rule 52 as that which appealed to a prurient interest as opposed to confusing it with the unacceptably broad words such as "improper" and "immoral," it would have some intact qualities. However, Rule 52 does not make clear its intent to regulate only that which is obscene. The other categories are too numerous in its reach.
In order to give Regulation 52 a constitutionally adequate limiting construction, this court would have to ignore the plain meaning of the words, "improper," "immoral," "indecent," and "profane." Furthermore, we would have to insert the word "obscene" into the clauses of the regulation which state, "nor shall any entertainment consisting of the spoken language or songs which can or may convey either directly or by implication an immoral meaning be permitted in, upon or about the permit premises," and "[e]ntertainment consisting of dancing, either solo or otherwise, which may or can, either directly or by implication, suggest an immoral act is prohibited." In fact, the use of the words, "which can or may convey either directly or by implication an immoral meaning," and "which may or can, either directly or by implication, suggest an immoral act," demonstrate an intention to prohibit more than obscene speech or expressive conduct. As a result, this court, as well as others, would be placed in the unacceptable position of having to rewrite, not just narrowly construe, Regulation 52. Just as it is not within the province of courts to rewrite statutes, Rowland, supra, it is not within their province to rewrite administrative regulations.
In light of the foregoing, we conclude that Regulation 52 is facially overbroad in violation of the First Amendment, and Section 11, Article I of the Ohio Constitution. Although the doctrine of overbreadth is to be used sparingly and only as a last resort, the doctrine is not a myth. If it does not apply here, it is difficult to see where it would have any application.
Key West's Second Assignment of Error is sustained.
 IV
Key West's First Assignment of Error having been overruled, but its Second Assignment of Error having been sustained, the judgment of the trial court is Reversed, and judgment is entered in favor of Key West, reversing and vacating the order of the commission imposing sanctions.
BROGAN, and WOLFF, JJ., concur.
Copies mailed to:
Richard A. Boucher, Betty D. Montgomery, David A. Raber Hon. Barbara P. Gorman
[1] Key West was charged with two other violations in Case No. 1509-96; however, these violations were dismissed immediately prior to the hearing.
[2] Effective March 30, 1999, appeals from decisions of the liquor control commission must be brought in the Franklin County Court of Common Pleas. The current version of R.C. 119.12 does not apply to this case.