OPINION
{¶ 1} Appellant, Ohio Lottery Commission ("Lottery Commission"), appeals the January 16, 2004 judgment entry of the Lake County Court of Common Pleas holding that former Ohio Administrative Code Section3770-2-03(B)(1) is unconstitutionally vague on its face and as applied to Appellees, JJ's Beverage Deli, LLC ("JJ's Beverage") and George O'Brien ("O'Brien"), d.b.a. Eastlake Marathon ("Eastlake Marathon"). For the following reasons, we affirm the decision of the court below.
 {¶ 2} This matter arose following a series of Ohio lottery "Pick 3" wagers placed by Patrick R. Murray ("Murray") at JJ's Beverage and Eastlake Marathon. Janet Jones is the principal owner of JJ's Beverage and was acquainted with Murray for many years as a customer and as a member of the community. On March 21, 2002, Jones allowed Murray to place between $140,000 and $160,000 in on-line wagers at JJ's Beverage without paying any money up front. Murray's winnings exceeded his wagers and Jones deducted the amount Murray owed from his winnings.
 {¶ 3} At this time, JJ's Beverage's average on-line sales were about $8,000 per week. In April, the Lottery Commission contacted Jones regarding the sharp increase in sales. Jones explained the reason for the sudden increase in sales. It is disputed whether Jones told the Lottery Commission investigators that credit was extended to Murray. At this time, Jones was told by the investigators that she was not violating any of the Lottery Commission's rules. In May 2002, Jones received an "Ohio Lottery VIP Party" as a reward for achieving high sales.
 {¶ 4} Between November 5 and November 7, 2002, Murray wagered approximately $490,000 on the Pick 3 game. Jones extended credit to Murray to cover the wagers. Jones claimed that she was able to cover the cost of these bets with her own funds if Murray failed to pay for the loan. On November 8, 2002, Murray asked for an additional $40,000 in credit to wager. Jones claimed not to have the time or the inclination to place these bets. However, Jones telephoned Murray's wagers to O'Brien's wife at Eastlake Marathon who placed Murray's wagers on credit. On November 8, 2002, Murray won several hundred thousand dollars, although not enough to cover the amount owed.
 {¶ 5} On November 9, 2002, Murray telephoned another $40,000 in wagers to Eastlake Marathon through Jones. Murray also wrote personal checks for $61,250 to JJ's Beverage and $40,000 to Eastlake Marathon to cover the remainder owed.
 {¶ 6} Both of Murray's personal checks were dishonored. Jones and O'Brien had to make deposits of their own money into their respective lottery bank accounts to ensure that there were sufficient funds to cover the Lottery Commission's electronic funds transfer from these accounts.
 {¶ 7} On November 20, 2002, the Lottery Commission wrote to Jones and O'Brien instructing them not to accept further wagers from Murray and advising that they might be in violation of Ohio Administrative Code Section 3770-2-03(B) concerning the "economical and efficient operation" of the lottery and of Section 3770:1-4-02(B)(5) prohibiting "bulk orders of tickets or the placement of wagers via the telephone." Jones and O'Brien requested an adjudicatory hearing. The hearing examiner found that Jones "violated OAC § 3770-2-03(B)(1) by accepting over one-half million dollars of Lottery wagers solely on the word of a customer, then compounding the error by involving a fellow agent." The examiner found that O'Brien "violated OAC § 3770-2-03(B)(1) by accepting four times [his] bond amount in wagers without collecting any funds to secure the debt."
 {¶ 8} On April 4, 2003, the Lottery Commission Director, Dennis Kennedy, adopted the hearing examiner's findings and ordered the revocation of Jones' and O'Brien's sales agent licenses.
 {¶ 9} Jones and O'Brien appealed the Lottery Commission's decision to the Lake County Court of Common Pleas, where the cases were consolidated. The trial court concluded that the Lottery Commission's decision "is supported by reliable, probative and substantial evidence, and is in accordance with the law." The trial court reversed the Lottery Commission's decision, however, on the grounds "that Ohio Admin. Code3770-2-03(B)(1) is unconstitutionally vague on its face and as applied to Appellants herein." The trial court noted that "Appellants have suffered revocation of their Sales Licenses based upon a general finding of financial irresponsibility despite the Hearing Examiner's conclusion that neither Appellant violated any specific rule or regulation of the Ohio Administrative Code. * * * While Appellants may have exercised poor judgment, the Ohio Administrative Code has no specific prohibitions against accepting wagers on credit or wagers on credit in excess of one's bond amount. Moreover, both Appellants had sufficient funds in their Lottery accounts when the funds were due, and stated that they could have covered their losses even if Mr. Murray had not ultimately won."
 {¶ 10} On appeal from the trial court, the Lottery Commission raises the following assignment of error: "The lower court erred as a matter of law when it held that Ohio Administrative Code Section 3770-2-03(B)(1) is unconstitutionally vague on its face and as applied to appellees JJ's Beverage and Deli and George O'Brien dba Eastlake Marathon."
 {¶ 11} Pursuant to former Ohio Adm. Code 3770-3-01, the director of the Lottery Commission shall suspend a sales agent's license "[i]f * * * the director determines that an agent no longer meets the standards for the issuance of a license provided in Chapter 3770-2 of these regulations." Under former Ohio Adm. Code 3770-2, the director possessed discretion to deny a license upon consideration of the following: "the financial responsibility and security of the applicant and the business or activity[,] * * * the applicant's credit-worthiness and integrity in past financial transactions[,] * * * the physical security of the applicant's place of business to determine that tickets which are consigned to the applicant, and the proceeds from ticket sales, will be kept safe." Former Ohio Adm. Code 3770-2-03(B)(1).[1]
 {¶ 12} Under the "due process" clause of the Fourteenth Amendment, a statute or administrative regulation is void for vagueness if its prohibitions or commandments are not clearly defined. In re Complaintagainst Harper (1996), 77 Ohio St.3d 211, 221, quoting Grayned v.Rockford (1972), 408 U.S. 104, 108; Amani Serv. Corp. v. Ohio Dept. ofCommerce, Div. of Liquor Control (2000), 137 Ohio App.3d 252, 255
("Fundamental fairness and the guarantee of constitutionally protected conduct dictate that persons not be required to guess at their peril about the meaning and application of a law or regulation.").
 {¶ 13} "In order to survive a void-for-vagueness challenge, the statute at issue must be written so that a person of common intelligence is able to determine what conduct is prohibited, and the statute must provide sufficient standards to prevent arbitrary and discriminatory enforcement." State v. Williams, 88 Ohio St.3d 513, 532, 2000-Ohio-428, citing Chicago v. Morales (1999), 527 U.S. 41, 56-57; Junction 615, Inc.v. Ohio Liquor Control Comm. (1999), 135 Ohio App.3d 33, 42. Legislative enactments are "presumed to be constitutional, and before a court may declare it unconstitutional it must appear beyond a reasonable doubt that the legislation and constitutional provisions are clearly incompatible." State ex rel. Dickman v. Defenbacher (1955),164 Ohio St. 142, paragraph one of the syllabus.
 {¶ 14} The determination of a statute's or regulation's constitutionality is a question of law. Thorp v. Strigari,155 Ohio App.3d 245, 2003-Ohio-5954, at ¶ 10. Accordingly, such determinations are reviewed under a de novo standard of review. Ohio BellTel. Co. v. Pub. Util. Comm. (1992), 64 Ohio St.3d 145, 147.
 {¶ 15} In the present case, JJ's Beverage's license was revoked for "accepting close to $500,000 in wagers without collecting any funds to secure the debt." Eastlake Marathon's license was revoked for "accepting four (4) times [its] bond amount in wagers without collecting any funds to secure the debt." At that time, there was no specific prohibition in the Ohio Administrative Code against accepting wagers on credit or against extending credit beyond one's bond amount. The Lottery Commission found, however, that JJ's Beverage and Eastlake Marathon had violated a section of the Administrative Code that allowed the director to deny/revoke a license in consideration of a licensee's "financial responsibility."
 {¶ 16} The Ohio Administrative Code does not define "financial responsibility," but, rather, states that a licensee's financial responsibility should "promote the economical and efficient operation of a statewide lottery consonant with the public interest." The trial court concluded, and we agree, that appellants' licenses were revoked "based upon a general finding of financial irresponsibility." For example, the Lottery Commission did not object to the fact that appellees accepted wagers on credit, but, rather, objected to the size of the wagers. The Administrative Code, however, provides no guidance for accepting wagers on credit. In the absence of a "definite standard" by which to determine what conduct constitutes "financial responsibility," former Ohio Adm. Code 3770-2-03(B)(1) is unconstitutionally vague.
 {¶ 17} The Lottery Commission argues that a person of "ordinary intelligence" should understand that wagering half a million dollars on credit is financially irresponsible. The Lottery Commission relies on the Ohio Supreme Court case of Salem v. Liquor Control Commission (1973),34 Ohio St.2d 244, which held that the phrase "improper conduct" was not unconstitutionally vague. Id. at 245-247.
 {¶ 18} We note that JJ's Beverage and Eastlake Marathon assumed the risk, and ultimately suffered the loss, of Murray's inability to cover the wagers he placed. The Lottery Commission admits that it suffered no monetary loss, and no delay in receiving payment to cover Murray's wagers, as a result of appellees' conduct. Jones and O'Brien further testified that they were able to guarantee the full amount of Murray's wagers. Given these circumstances, it is difficult to discern how appellees' conduct compromised "the economical and efficient operation of a statewide lottery."
 {¶ 19} Moreover, this court has recognized the limited precedential value of the Salem decision in light of the subsequent development of due process jurisprudence. "Salem concentrated solely on the actual wording used in the regulation and not the possibility it presented for arbitrary and discriminatory enforcement. In Kolender [v. Lawson (1983),461 U.S. 352] and the many United States Supreme Court cases analyzing vagueness that have come out since Salem, the court's main concern has been the possibility that an enactment would be applied in an arbitrary and discriminatory fashion." Junction 615, 135 Ohio App.3d at 42 (inJunction 615, this court found the phrase "improper conduct," previously approved in Salem, void for vagueness because it allowed for "arbitrary and discriminatory enforcement"). Accordingly, we must look beyond the question of whether persons of ordinary intelligence would understand appellees' conduct to be financially irresponsible. The proper question is whether a person of ordinary intelligence could determine what conduct is prohibited by the statute and whether there are "sufficient standards to prevent arbitrary and discriminatory enforcement." Williams,88 Ohio St.3d 513, 532 (citation omitted).
 {¶ 20} The Lottery Commission asserts that former Ohio Adm. Code3770-2-03(B) is not susceptible to arbitrary and discriminatory enforcement because only the director of the Lottery Commission can make a determination regarding "financial responsibility" and the director's discretion is limited by consideration of "the economical and efficient operation of a statewide lottery." We disagree.
 {¶ 21} The principle that ours is a "government of laws and not of men" is much older than the due process clause itself.[2] In light of the fact that the regulations did not prohibit or provide guidelines for accepting wagers on credit, the fact that only the director was entitled to exercise discretion in revoking licenses ensured that enforcement would be arbitrary. We fail to see how the director's exclusive discretion to revoke a sales agent license would have aided an individual to conform his conduct to the regulation. Essentially, "financial responsibility" encompassed whatever conduct the director decided it should encompass. Thus, it violated due process of the laws. Greyned v.City of Rockford (1972), 408 U.S. 104, 108-109 ("It is a basic principle of due process that an enactment is void for vagueness if its prohibitions are not clearly defined. * * * [I]f arbitrary and discriminatory enforcement is to be prevented, laws must provide explicit standards for those who apply them. A vague law impermissibly delegates basic policy matters * * * on an ad hoc and subjective basis, with the attendant dangers of arbitrary and discriminatory application.").
 {¶ 22} For the foregoing reasons, the decision of the Lake County Court of Common Pleas declaring former Ohio Adm. Code 3770-2-03(B)(1) unconstitutional is affirmed.
Ford, P.J., Rice, J., concur.
[1] This provision was repealed, effective February 13, 2004.
[2] John Adams included the phrase in the Massachusetts Constitution, Part the First, Article XXX, drafted in 1780.