[Cite as *State v. Bielski*, 2013-Ohio-5771.]

STATE OF OHIO, MAHONING COUNTY

IN THE COURT OF APPEALS

SEVENTH DISTRICT

| | | |
|---|---|---|
| STATE OF OHIO | ) | CASE NO. 12 MA 217 |
| | ) | |
| PLAINTIFF-APPELLEE | ) | |
| | ) | |
| VS. | ) | OPINION |
| | ) | |
| JOHN BIELSKI | ) | |
| | ) | |
| DEFENDANT-APPELLANT | ) | |

CHARACTER OF PROCEEDINGS:  Criminal Appeal from the Youngstown
Municipal Court of Mahoning County,
Ohio
Case No. 12 CRB 2359

JUDGMENT:  Reversed.
Charge Dismissed.

APPEARANCES:

For Plaintiff-Appellee:  Atty. Dana Lantz
Youngstown City Prosecutor
Atty. Kathleen Thompson
Assistant City Prosecutor
26 S. Phelps Street
Youngstown, Ohio 44503

For Defendant-Appellant:  Atty. Richard Wm. Machuga
P.O. Box 2305
Youngstown, Ohio 44509

JUDGES:

Hon. Cheryl L. Waite
Hon. Gene Donofrio
Hon. Mary DeGenaro

Dated: December 19, 2013

WAITE, J.

**{¶1}** This case arises from a judgment entry in the Youngstown Municipal Court convicting Appellant John Bielski of a city property maintenance code violation. Appellant was issued a criminal citation by two Mahoning County Sheriff's Deputies after they concluded that there was an accumulation of rubbish on property owned by Appellant but leased to Matthew Horvath. The citation stated that Appellant had violated section 307.1 of the Youngstown Property Maintenance Code, a third-degree misdemeanor criminal offense. The Youngstown Property Maintenance Code is part of Chapter 546 of the Youngstown Municipal Ordinances ("Youngstown Ord.") Appellant was found guilty in a bench trial and sentenced to a $100 fine and court costs.

**{¶2}** Appellant argues on appeal that the Youngstown Property Maintenance Code section he was charged with is so vague that a person of ordinary intelligence would not be put on notice as to the behavior that is proscribed. Appellant is correct. First, Appellant was charged with a section of the Youngstown Property Maintenance Code that does not, as far as we can determine, actually exist. He was charged with violating Youngstown Property Maintenance Code Section 307.1. Neither the Youngstown Property Maintenance Code nor the Youngstown Municipal Ordinances ("Youngstown Ord.") contain a section 307.1 dealing with rubbish removal. Appellant is left to assume that he was actually charged with violating the International Property Maintenance Code, which does have a section 307.1, dealing with rubbish removal. This International Property Maintenance Code is not specifically incorporated into the

Youngstown Ordinances. It is merely given a passing reference within Chapter 546, but does not appear to be specifically codified within the Chapter.

{¶3} Second, as stated by Appellee, the offense with which Appellant was charged was a strict liability criminal offense that contains no guidelines defining its parameters or preventing its arbitrary enforcement. International Property Maintenance Code Section 307.1 prohibits the "accumulation of rubbish or garbage" in both the interior and exterior of every structure. The deputies who issued the citation could not explain what "accumulation of rubbish" meant. The section of the actual Youngstown Property Maintenance Code cited on appeal makes no reference to whether it is the owner or tenant's responsibility to keep the premises free from garbage. There is no definition as to how long the rubbish must be present to be treated as an "accumulation." There are no guidelines explaining when a person should receive a warning, an administrative citation, or a criminal citation. We therefore conclude that International Property Maintenance Code Section 307.1, whether enforced directly or purportedly through Youngstown Ord. Chapter 546, is unconstitutionally vague on its face. Appellant's conviction is reversed and the charge dismissed.

<u>Background</u>

{¶4} Appellant is the owner of the property located at 2851 Ridley Avenue, Youngstown Ohio. On August 15, 2012, Appellant signed a one-year lease agreement with Matthew Horvath. At the time the lease was executed, furniture and rugs from the previous tenant remained in the building. Part of the lease stipulated

that Horvath would remove these objects. The day of the signing was the last time that Appellant was at the Ridley Avenue property until after he was issued the citation for unlawful accumulation of rubbish.

{¶5} On October 19, 2012, Deputies Walker and Owens of the Mahoning County Sheriff's Department, having received an unknown number of complaints about furniture and other debris on the Ridley property lawn, jointly issued a citation to Appellant for violating what they referred to as YPMC Section 307.1. "YPMC" appears to refer to the Youngstown Property Maintenance Code, even though there is no section 307.1 of that code. While it is never specifically incorporated into the YPMC, there is a Section 307.1 of the International Property Maintenance Code that prohibits the accumulation of rubbish and garbage. In the yard were several pieces of furniture, carpets, piles of clothes, and some tires. Some of the items were located inside of the open garage or on the porch.

{¶6} Prior to issuing the citation to Appellant, Deputy Owens had come to the house twice to discuss with the tenant the garbage accumulation: once on the day prior to issuing the citation, and once more on an unknown prior date. He found no occupant on either occasion, but believed that someone was living there. He went to the auditor's office to locate the owner of the Ridley Avenue property. Both deputies then went to Appellant's home and told him about the problem. Appellant denied knowledge of the problem. The deputies immediately issued the citation instead of simply giving him verbal or written notice because "[i]f it needs to be really cleaned up, we give out citations." (Tr., p. 12, testimony of Deputy Walker.) After

receiving the citation, Appellant contacted Horvath to have the Ridley Avenue property cleaned up. Appellant confirmed that it was clear of rubbish on October 21st, and Deputy Walker also confirmed this fact within thirteen days of the issuance of the citation.

**{¶7}** On November 13, 2012, a bench trial was held in the Youngstown Municipal Court. Immediately following the trial, Appellant was found guilty and fined $100. He was granted a stay of execution pending the appeal. This timely appeal followed. We will treat both of Appellant's assignments of error together.

<u>ASSIGNMENT OF ERROR NO. 1</u>

§ 307.1 OF THE INTERNATIONAL PROPERTY MAINTENANCE CODE IS UNCONSTITUTIONAL IN THAT IT IS OVERBROAD.

<u>ASSIGNMENT OF ERROR NO. 2</u>

§ 307.1 OF THE INTERNATIONAL PROPERTY MAINTENANCE CODE IS INVALID AS A MATTER OF LAW AS IT IMPOSES INDIVIDUAL VICARIOUS CRIMINAL LIABILITY AND CONFLICTS WITH ORC § 2901.21(A).

**{¶8}** Appellant argues that the rubbish ordinance is unconstitutionally vague since it imposes strict criminal liability onto the owner of the land in question without explaining what is required by the ordinance, and without having any definable enforcement mechanism, thus leading to arbitrary enforcement. Although the assignments of error only mention that the law is overbroad, it is clear that the actual thrust of the argument is that the statute is vague, since it is not clear what his duty is

as a property owner or landlord. It was primarily under the vagueness doctrine that the criminal citation was challenged in the trial court. We are aware that the overbreadth doctrine cannot apply in this case. The overbreadth doctrine is reserved for cases involving alleged violations of First Amendment rights, such as freedom of the press, speech or assembly: "generalized overbreadth challenges are recognized only in First Amendment issues * * *." *State v. Vrabel*, 99 Ohio St.3d 184, 2003-Ohio-3193, 790 N.E.2d 303 at ¶64 citing *New York v. Ferber*, 458 U.S. 747, 768, 102 S.Ct. 3348, 73 L.Ed.2d 1113 (1982). Therefore, the only possible issue under this assignment of error is whether the Youngstown Property Maintenance Code ("YPMC") was unconstitutionally vague and failed to clearly explain to Appellant what his duties were, as a landlord, regarding the accumulation of rubbish and garbage.

{¶9} The interpretation of a statute is a question of law that we must review *de novo. Washington Cty. Home v. Ohio Dept. of Health*, 178 Ohio App.3d 78, 2008-Ohio-4342, 896 N.E.2d 1011, ¶27. All enacted legislation enjoys a strong presumption of constitutionality. *Sorrell v. Thevenir*, 69 Ohio St.3d 415 at 418-419, 633 N.E.2d 504 (1994). To overcome this presumption, "it must appear beyond a reasonable doubt that the legislation and constitutional provisions are clearly incompatible." *State ex rel. Dickman v. Defenbacher*, 164 Ohio St. 142, 128 N.E.2d 59 (1955), paragraph one of the syllabus. A statute will be upheld unless the challenger can meet the burden of establishing beyond a reasonable doubt that the statute is unconstitutional. *State v. Tooley,* 114 Ohio St.3d 366, 2007-Ohio-3698, 872 N.E.2d 894, at ¶29.

**{¶10}** A statute or ordinance may be ruled unconstitutional on grounds of vagueness. *State v. Bennett*, 150 Ohio App.3d 450, 458, 2002-Ohio-6651, 782 N.E.2d 101 (1st Dist.2002). The vagueness doctrine is premised on the due process clause of the Fourteenth Amendment and "bars enforcement of 'a statute which either forbids or requires the doing of an act in terms so vague that men of common intelligence must necessarily guess at its meaning and differ as to its application.'" *Id.* at ¶17 citing *United States v. Lanier*, 520 U.S. 259, 266, 117 S.Ct. 1219, 137 L.Ed.2d 432 (1997), quoting *Connally v. General Construction Co.*, 269 U.S. 385, 391, 46 S.Ct. 126, 70 L.Ed. 322 (1926). "When [a] resolution is challenged as unconstitutionally vague, the reviewing court must determine whether the statute provides sufficient notice of its proscriptions and contains reasonably clear guidelines to prevent official arbitrariness or discrimination in its enforcement." *State v. Brundage*, 7th Dist. No. 01 CA 07, 2002-Ohio-1541, ¶7.

**{¶11}** The standards for vagueness require more precision in the criminal context than in other situations, such as in a regulatory context. *Salem v. Liquor Control Comm.*, 34 Ohio St.2d 244, 246, 298 N.E.2d 138 (1973). There is also a heightened scrutiny for vagueness when the statute in question imposes strict liability for the crime. *State v. Young*, 62 Ohio St.2d 370, 406 N.E.2d 499 (1980).

**{¶12}** To avoid being unconstitutionally vague, "a criminal statute must clearly define its prohibitions so that persons of ordinary intelligence may comprehend the statute to fairly inform themselves of the generally proscribed behavior and so that the statute does not encourage arbitrary or discriminatory enforcement." *Bennett,*

*supra*, at ¶19, citing *Kolender v. Lawson*, 461 U.S. 352, 357, 103 S.Ct. 1855, 75 L.Ed.2d 903 (1983); *Grayned v. City of Rockford*, 408 U.S. 104, 108, 92 S.Ct. 2294, 33 L.Ed.2d 222 (1972).  In other words, a statute "must be sufficiently definite to provide a person of ordinary intelligence with adequate notice of the conduct that the statute proscribes [and] * * * must provide sufficiently definite guidelines for law enforcement officials in order to prevent arbitrary and discriminatory enforcement." *Bennett* at ¶19 citing *State v. Dorso*, 4 Ohio St.3d 60, 446 N.E.2d 449 (1983).

**{¶13}** A legislative enactment may be unconstitutional on its face, or as applied in a specific circumstance.  A facial challenge requires that "the challenging party * * * show that the statute is vague 'not in the sense that it requires a person to conform his conduct to an imprecise but comprehensible normative standard, but rather in the sense that no standard of conduct is specified at all.' " *State v. Anderson*, 57 Ohio St.3d 168, 171, 566 N.E.2d 1224 (1991), quoting *Coates v. Cincinnati*, 402 U.S. 611, 614, 91 S.Ct. 1686, 29 L.Ed.2d 214 (1971).  If the statute is being challenged only as applied to the circumstances of the case, the challenger "contends that application of the statute in the particular context in which he has acted, or in which he proposes to act, [is] unconstitutional." *State v. Lowe*, 112 Ohio St.3d 507, 2007-Ohio-606, 861 N.E.2d 512, ¶17.  We interpret Appellant's argument as a facial challenge to the ordinance.

**{¶14}** We find that the ordinance in question is unconstitutionally vague on a number of levels.  First, it is apparent that there is a problem in how a person is even cited with a violation of the YPMC.  The YPMC is found in Chapter 546 of the

Youngstown Municipal Ordinances. Appellant was not cited for a violation of any section of Chapter 546. He was cited for violation of "YPMC 307.1". This is obviously not a general reference to the Youngstown Ord., because Chapter 3 of the Youngstown Ord. is the Traffic Code. As mentioned earlier, "YPMC" appears to be a shorthand reference to the Youngstown Property Maintenance Code, even though there is no Section 307.1 of that code. However, there is an International Property Maintenance Code ("IPMC") that does contain a Section 307.1 and deals with rubbish removal, and this is apparently the rule that Appellant supposedly violated. Youngstown Ord. 546.13 makes reference to the IPMC in the YPMC, but does not separately list or enumerate the IPMC provisions nor does it appear to adopt or specifically incorporate the IPMC into the codified ordinances. Youngstown Ord. 546.06(d) allows any violation of the YPMC to be prosecuted as a third-degree misdemeanor, punishable by up to 60 days in jail. Youngstown Ord. 546.06(e) defines any violation of the YPMC as a strict liability offense. Through this circuitous route, a person of ordinary intelligence is supposed to glean what "YPMC 307.1" means and what it requires. It is apparent, however, that no person of ordinary intelligence could possibly understand how all these documents and references are related, much less know what they require.

{¶15} Assuming that the IPMC was properly adopted and incorporated into law, there are a myriad of problems with the actual language of IPMC Section 307.1:

**Accumulation of rubbish or garbage**.   All exterior property and premises, and the interior of every structure, shall be free from any accumulation of rubbish or garbage.

**{¶16}** Because the relevant Youngstown Ord. attempts to make violations of this law a strict liability offense punishable by up to 60 days in jail, one would expect a clear definition of such terms as "accumulation," "rubbish," "garbage," "exterior," "interior," "structure," and "premises."  "[I]f arbitrary and discriminatory enforcement is to be prevented, laws must provide explicit standards for those who apply them." *City of Akron v. Rowland*, 67 Ohio St.3d 374, 381, 618 N.E.2d 138 (1993); *see also*, *Kelleys Island v. Joyce*, 146 Ohio App.3d 92, 98, 765 N.E.2d 387, 391 (6th Dist.2001).

**{¶17}** It was obvious from the testimony of the sheriff's deputies, Appellant, and the comments by the trial judge that almost none of the key words in IPMC 307.1 were particularly clear.  The portions of this Code provided to the trial court give no indication as to what constitutes "rubbish or garbage," what "accumulation" means, nor any indication of how long an "accumulation" must exist before it becomes a violation.  IPMC Section 307.1 does not prohibit putting one's personal property outside on the lawn.  It only prohibits rubbish and garbage from being on the property.  An old chair on a porch may be rubbish to one person, or it may be merely a comfortable chair that another person uses to sit on the porch.  A worn automobile tire may be garbage to one person, but may be a usable spare tire available to

another person. In order to impose strict liability for violations, parties must first clearly be on notice as to what constitutes a violation.

{¶18} Further, testimony reveals that the process of enforcement is completely arbitrary. Although the citation was issued because there were "many complaints," Deputy Walker was unable to either recall the number of complaints he had received about the property or recall on what prior dates he had observed the property. (Tr., p. 5.) At trial, Deputy Walker explained the process he followed when issuing the citation:

A  Well, if it ain't too bad, we give out warnings. If it's – If it needs to be really cleaned up, we give out citations.

Q  When you say that if it isn't too bad, what do you mean?

A  Meaning we don't give citations for two tires or one tire.

Q  Okay.

A  If we got several tires, you will get a citation * * *

Q  So in this - So in this instance you felt it warranted to issue a citation?

A  Yes.

Q  And why was that?

A    Because of the horrible condition of the property, the many complaints the property had.

(Tr., pp. 12-13.)

{¶19} It is clear from this testimony that there is a lack of a well-defined system which can be relied upon to prevent arbitrary decisions made by the officers charged with issuing citations. Deputy Walker obviously had little or no guidelines for use in determining whether or not a citation should be issued or even what behavior constitutes a violation. He admitted that there is no policy in place to guide how many times officers should try to make contact with the occupants of the premises before issuing a citation to the owner of the property. (Tr., p. 21.) We do not fault the deputies for having difficulty explaining so many aspects of such an unclear ordinance. When people of ordinary intelligence are unable to understand exactly what acts are prohibited by the rubbish ordinance, or even determine whether a valid ordinance even exists, the ordinance is unconstitutionally vague, and is therefore unenforceable.

{¶20} The YPMC, even if we include provisions of the IPMC, also fails to give guidance regarding when notice should be given before the issuance of the citation. YPMC Section 546.05(a), allows, but does not require, a warning to be given prior to issuing a citation. It is evident from Deputy Walker's testimony that this provision is arbitrarily enforced and is left to the complete discretion of the official in charge of evaluating the alleged violation, a violation with no clearly enumerated standards. In this case, Appellant testified that he was not aware that there was rubbish on his

rental property. The first notice he had of the problem was when he was issued the citation. When he was notified, he immediately acted to correct the problem by having Horvath clean the premises. This put the property back into conformity with the ordinance, according to Deputy Walker. It is apparent from the record that in this case, arbitrary enforcement of the notice provisions here resulted in a conviction that could have led to 60 days in jail, whereas in another case, the deputy would have simply told the landlord about the problem and it would have been resolved without a citation being issued.

{¶21} The Eleventh District Court of Appeals has concluded that an ordinance which offered no standard to be used in determining what behavior or action constituted a violation was unconstitutionally vague. *State v. Ferraiolo*, 140 Ohio App.3d 585, 748 N.E.2d 584, 586 (11th Dist.2000). In the present matter, it is apparent that there is no standard in the ordinance with which to determine when a person who violates the ordinance is to be given a warning rather than a criminal citation. This appeal presents a rather stark example of the unbridled discretion of government officials in interpreting a criminal law.

{¶22} We also note that the city ordinance is vague as to which party is to be cited once a violation is determined to exist. The broader YPMC seems to imply that the occupant is responsible for keeping the premises free of any accumulation of rubbish or garbage, rather than the landlord. Again, assuming these were to be found properly adopted, Section 307.2 of the IPMC indicates that the occupant shall dispose of rubbish, and 307.3 indicates that the occupant shall dispose of garbage.

These same sections both indicate that the duty of the owner of the premises is only to provide approved containers and waste removal apparatuses, but do not make the owner liable for the misuse of those containers. Additionally, YPMC Sections 546.11 and 546.12 clearly define the separate maintenance duties of landlords and tenants, but IPMC Section 307.1 does not. It appears that the owner could be cited for failing to provide the trash containers, but not necessarily for failure to properly use the containers, which would be the responsibility of the tenant. Again, this lack of clarity not only does not give notice of the specific conduct forbidden by the statute, but fails to clearly define the responsible party.

{¶23} Based on the vagueness of IPMC Section 307.1, the vagueness of its relationship, if any, to the YPMC, and the arbitrary means of enforcing these provisions, we sustain Appellant's two assignments of error and declare IPMC Section 307.1 to be unconstitutionally vague and unenforceable, whether enforced directly or through Youngstown Municipal Ordinance Chapter 546.

### Conclusion

{¶24} Appellant argues that he was improperly convicted of an unconstitutionally vague ordinance dealing with the removal of rubbish and garbage. We must agree. A person of average intelligence would not be able to understand what acts are prohibited by International Property Maintenance Code Section 307.1, or even how this international code relates to the Youngstown City Ordinances. Enforcement of the section is left to the absolute discretion of the individual sheriff's deputy who is notified of a potential violation, leading to arbitrary enforcement.

Lastly, IPMC Section 307.1 not only does not give clear guidance as to what behavior constitutes a violation, it also does not allocate liability for any alleged violation.   Both of Appellant's assignments of error are sustained, and International Property Maintenance Code Section 307.1, whether enforced directly or through Youngstown Ord. Chapter 546, is hereby declared to be unconstitutional on its face. The judgment of the trial court is reversed and the charge is dismissed.

Donofrio, J., concurs.

DeGenaro, P.J., concurs.